R. H. BATTLE, Executor, v. R. H. LEWIS.    (Appeal by Vestry of Christ Church.)

(Filed 29 May, 1908.)

1. Wills—Personal Property—Legacies—Residue of a Residue.

   The general rule of construction of a will of personal property, that a general residuary clause carries whatever is not otherwise legally disposed of, has no application in construing a bequest of a residue of a residue..

2. Wills—Conversion of Real Property—Lapsed Legacy—Residue of a Residue—Intestacy—Distribution.

   When an executor is directed to sell certain real estate which belonged to his testator and pay from the proceeds a sum certain to each of specified legatees, and, in the event of the prior death of a certain one of them, his share to go to a certain church; and, further, under the same item, should there be a surplus, it should go to the said church: *Held*, by the provision of the will the proceeds of the sale of the land will be deemed personalty, and, in

the absence of a general residuary clause, a lapsed legacy of one named in this item and not therein provided for does not go to the church; for, as to this legacy, the testator died intestate, and it is subject to the general law of distribution.

### 3. Wills—Bequests Specific—Id Certum Est, etc.

When a will bequeathes to named legatees a fixed sum each, which is to be paid, with another fixed amount elsewhere directed to be paid in the will, from the proceeds of sale by the executor of certain land, a bequest of the residue is specific, it being capable of being made certain.

### 4. Wills—Construction—Evidence of Intent.

A testator devised that the proceeds of sale of certain lands were to be distributed in a certain sum each to specified legatees. In the event of the lapse of a legacy, by death, given to one of them, her brother, an old man, it was bequeathed to a certain church. Another of the legatees, her nephew, a young man, predeceased his testatrix without further provision having been made by her respecting his lapsed legacy. By the same item of the will the church was bequeathed the surplus, should there be any: *Held*, these facts were some evidence, though not conclusive, of the intention of the testator that the lapsed legacy of the nephew should not go to the church as the residuary legatee of the residue.

ACTION heard by *Biggs, J.,* at February Term, 1908, of WAKE.

This action was brought by the executor of Maria T. Haywood against her devisees, legatees and heirs at law, and the vestry and trustees of Christ Church for a construction of her will. The plaintiff alleges in his complaint:

1. That Maria T. Haywood, late of said county, died in said county during the month of December, 1906, leaving a last will and testament, of which the plaintiff was duly appointed executor, and duly qualified as such about 1 January, 1907. A copy of said last will and testament is hereto attached and asked to be taken as part of this complaint.

2. That there came into his hands as such executor the sum of $22 in cash, which has been expended, with rents from the real property of the estate from January to December, 1907, in the administration of said estate.

3. That the brother of his testatrix, Frank Haywood, and also one of her nephews, John Bryan, both named in said last will and testament, died during the lifetime of said testatrix.

4. That under the said last will and testament the plaintiff sold the property described in item 4 of said will and testament, and the assets now in the hands of the plaintiff and which will come into his hands upon the collection of the deferred payments for the purchase of said property arise entirely from the proceeds of the sale of the said property described in item 4.

5. That a doubt has arisen as to the disposition of the pecuniary legacy to said John Bryan, he having, as aforesaid, died prior to the death of said testatrix; that is, whether the same should be paid to the said vestry and trustees of Christ Church or to the heirs at law and next of kin of said testatrix. The plaintiff wishes to be advised by the court as to who is entitled to receive the said legacy of $500 given to John Bryan, deceased, as aforesaid.

6. That the defendants, other than the said vestry and trustees of Christ Church, are heirs at law and next of kin of said Maria T. Haywood, deceased.

7. That Frank Haywood, the brother of the testatrix, was at the time said will was dated an old man.

Wherefore the plaintiff asks judgment:

1. For the construction of said last will and testament as to the lapsed legacy to said John Bryan, deceased, and for a determination as to the parties thereto entitled.

2. That the costs of this proceeding be paid out of the estate of the said testatrix.

The following is a copy of the will:

"I, Maria T. Haywood, of the city of Raleigh, do make and declare the following to be my last will and testament:

"Item 1. I wish my just debts to be paid out of any moneys I may leave or have on hand or in bank at my death, and if they prove insufficient I wish my houses and lots to be

kept rented out until the rents, which shall be collected by my executor for the purpose, shall be sufficient to pay the residue.

"Item 2. I will and direct that a suitable monument shall be erected at my grave, and that my executor shall expend of the assets of my estate (about) six hundred dollars in the payment of my funeral expenses and the costs of such monument and its erection; and I give to the Raleigh Cemetery Association one hundred dollars ($100) on the condition that it will perpetually keep the lot on which my body shall be buried in good condition.

"Item 3. I give and devise to my niece, Effie Woodruff, and my nephew, Graham Haywood, my house and lot in the city of Raleigh, at the corner of Wilmington and Jones streets, and now occupied by P. H. Andrews, in *fee simple,* to be theirs in possession as soon as my executor shall have collected moneys sufficient to pay my debts in the manner provided in item one.

"Item 4. I give and devise to the executor hereinafter appointed my other two houses and lots in said city, one fronting on Wilmington Street and the other fronting on Jones Street, with their appurtenances, in trust that he will sell the same in such manner and upon such terms as to him may seem best, and apply the proceeds, first, in payment of the seven hundred dollars as designated in item 2, and then in discharge of the pecuniary legacies herein below provided for.

"Item 5. I give and bequeath to my brother, Frank Haywood, and my nephews, Frank Haywood, Jr., Sherwood Haywood, Howard Haywood, Marshall Haywood, Sherwood Badger and John Bryan, each five hundred dollars ($500); my brother, Frank Haywood, if alive at my death, to receive his legacy as soon as possible after the sale of said houses and lots, out of the cash payments. If he shall have died before my death, I give the legacy intended for him to the trustees and vestry of Christ Church, of which I am a member. Should the residue of the proceeds be insufficient to pay the

148—10

legacies to my said nephews in full, they are to abate *pro rata;* and if there shall be a surplus, I give and bequeath the same to the said trustees and vestry of Christ Church; the legacy to said church to be used and employed in such manner and for such purpose as to the rector and vestry may seem best.

"Item 6. I give and bequeath my personal effects and estate as follows: My camel's-hair shawl to my niece, Lavinia Martin; my bedroom furniture in the room generally occupied by me to my niece, Eleanor Haywood; my carved bedstead and wardrobe of the same set with it to my niece, Marian Haywood; all my silver forks to my niece, Effie Woodruff; twelve dessert silver spoons, to be selected by my executor, to my cousin, Frank Parker; and all the residue of said personal effects to my nieces, Lucy Manly, Elizabeth Young and Eleanor Haywood, to be equally divided between them.

"Item 7. I appoint Richard H. Battle, Esq., of the city of Raleigh, the executor of this my will.

"In witness whereof, I have hereunto set my hand and seal, this 14th day of June, 1895."

The devisees, legatees and heirs at law did not answer. The vestry and trustees of Christ Church admitted the allegations of the complaint to be true, and insisted that they are entitled to the lapsed legacy. The court held that the next of kin of the testatrix are entitled to the fund. Judgment having been rendered accordingly, the trustees and vestry of Christ Church appealed.

*E. S. Battle* for executor.
*Busbee & Busbee* for defendants.

WALKER, J., after stating the case: The will which we are asked to construe has no general residuary clause. The testatrix, in item 4, devised certain lots in the city of Raleigh to her executor for the purpose of being sold, with the direction that of the proceeds of the sale $700 should be applied as provided in item 2, and the residue "in discharge of the pecu-

niary legacies" given in a subsequent part of the will.   In
item 5 she bequeathes from the fund thus to be created by a
sale of the lots the sum of $500 to her brother, Frank Hay-
wood, and $500 to each of her nephews, who are named in
that item.   She then provides that, if her brother, Frank
Haywood, should predecease her, the legacy intended for him
shall go to the trustees and vestry of Christ Church.   If the
residue of the fund is not sufficient to pay the legacies given
to her nephews in full, they shall abate *pro rata,* and "if there
shall be a surplus" it is bequeathed to the said trustees and
vestry of Christ Church.   Her brother and one of her
nephews, John Bryan, died in the lifetime of the testatrix.
The particular question before us for our decision, and upon
which our judgment and direction are now sought by the ex-
ecutor, concerns the proper disposition of the legacy given to
the deceased nephew, John Bryan.   Does it go to Christ
Church, or did the testatrix die intestate as to that part of the
fund, so as to subject it as undisposed of property to the stat-
ute of distribution?   We are of the opinion, after most care-
ful consideration, that the latter is the correct view to be
taken in respect of this bequest.   The very same question
was raised in the case of *Davis v. Davis,* 62 Ohio St., 411,
in which the Court, referring to a contrary ruling by the
Judge below, thus states and applies the rule of construction:
"This conclusion seems at variance with the will and the
apparent intention of the testator.   The 'balance' that is
given to the so-called residuary legatees is not the general
*residuum* of *all* of the testator's estate, but only what re-
mained of a particular fund derived from specified sources,
after deducting therefrom the amount of the charitable lega-
cies and certain other charges upon it.   The gift of that bal-
ance necessarily excludes from the gift everything that the
will provides shall be deducted from the fund in order to
arrive at the balance.   The testator, when he made his will,
evidently expected the bequests to the charities to be valid,

and intended the money to be applied to them as provided in the will; otherwise, he would not have made such bequests. That he did not expect those bequests to become void by his death, within a year from the execution of the will, is apparent from the fact that he made no provision for the disposition of the money in that event. And, although the bequests became ineffectual to carry the fund to the expressed objects of the testator's bounty, it seems obvious his intention was to limit the gift under the so-called residuary clause to whatever balance should remain after these and other charges were taken out of the fund from which they were directed to be paid." This fits our case exactly. We have said there is no clause in this will which purports to dispose of the general *residuum* of the testatrix's property. The item we are construing is, in terms, limited to the disposition of the balance of a particular fund which was derived from a specified source, first, to the payment of certain specified legacies, the surplus or residue, if any, to be paid to Christ Church. That surplus of a residue is only what is left after taking from the fund the amount apportioned to her brother and nephews, though from the happening of an unexpected event one of the legacies failed or lapsed. The requirement that the amount of those bequests must be taken from the fund in order to arrive at the balance that shall pass to Christ Church clearly carries an intention of the testatrix that no part of that amount shall go with it. What disposition she would have made of the legacy which would have gone to John Bryan had he survived her, if at the time she made her will she had anticipated the failure of that legacy, is left to mere conjecture, and we are not authorized to act upon the presumption that she did not intend to die intestate as to any part of her property, in order to dispose of that part of the fund as we may now suppose the testatrix would have done had her attention been directed to the matter. "In the construction of wills conjecture is not permitted to supply what the testator has

failed to indicate; for, as the law has provided a definite successor, in the absence of disposition, it would be unjust to allow the right of this ascertained object to be superseded by the claim of any one not pointed out by the testator with equal distinctness." *Davis v. Davis, supra,* citing 1 Jarman on Wills, 326. The same doctrine, as we have stated, is recognized in the learned and exhaustive opinion of the Court in *Kerr v. Dougherty,* 79 N. Y., 327, where it is said: "The general rule is that in a will of personal property the general residuary clause carries whatever is not otherwise legally disposed of. But this rule does not apply where the bequest is of a *residue of a residue* and the first disposition fails. This was held in *Beekman v. Bonsor,* 23 N. Y., 298, 312, and as it was there laid down, quoting from the master of the rolls in *Skrymsher v. Northcote,* 1 Swanst., 570: 'It seems clear, on the authorities, that a part of the residue of which the disposition fails will not accrue in augmentation of the remaining parts as a *residue of a residue;* but, instead of resuming the nature of residue, it devolves as undisposed of.' *Downing v. Marshall,* 23 N. Y., 382; *White v. Howard,* 46 *id.,* 144." See, also, *Riker v. Cornwell,* 113 N. Y., 125, where the following case is stated: "I give all my 3 per cents to A, and all the rest of my government stocks to B, and if the gift of the 3 per cents to A fails by lapse, will they go to B? It appears to me the answer must be in the negative, for it is quite clear that the rest of the government stocks was not a residuary bequest which could take in or include the particular thing which was given by a separate description to somebody else. * * * The failure of the first gift would not be for the benefit of the person to whom the other stocks are given," citing *Springett v. Jennings,* L. R., 6 Ch. App., 333. The general rule prevailing with us (*Simms v. Garrot,* 21 N. C., 395) is also there stated, as follows: "The doctrine is firmly established by the reported cases and by the text-books that, where the residuary bequest is not circumscribed by

clear expressions in the instrument, and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapse, invalid dispositions or other accident." But not so when the residue is given out of a particular fund, as in our case, and is itself what is left after deducting certain sums from another residue. The amount going to the beneficiary of the last *residuum* is fixed by the terms of the will, as used by the testatrix at the time of its execution, and the final residue is described in certain and unmistakable language. *Peay v. Barber,* 1 Hill Ch., star p. 95 (10 So. Ca. Eq. Rep., 69). In *King v. Woodhull,* 3 Edw. Ch., 82, it is laid down that "to entitle a residuary legatee to the benefit of a lapsed or void bequest he must be a legatee of the residue generally, and not partially so; for, where it is manifest from the express words of the will that a gift of the residue is confined to the residue of a particular fund or a description of property, or to some certain *residuum,* he will be restricted to what is thus particularly given, since the legatee cannot take more than is fairly within the scope of the gift."

In *Winston v. Webb,* 62 N. C., 1, this Court held that when a residuary fund is given by will to the children of a certain person, to be equally divided between them *as a class*—that is, not naming them—and one of them die in the lifetime of the testator, his share will lapse for the benefit of the other residuary legatees; but if such a fund be given to the children, *not as a class,* but *nominatim,* to be equally divided between them, and one of them die before the testator, that share will lapse, but will not fall into the residue for the benefit of the other children, whose shares, it is said, cannot be enlarged by such event, citing several cases, which cases show, says the Court, that the lapsed residuary share is undisposed of by the will and must be distributed among the next of kin. The legacy to the church in this case is specific, according to the authorities. *Johnson v. Johnson,* 38 N. C.,

426; *Everett v. Lane,* 37 N. C., 548; *Perry v. Maxwell,* 17
N. C., 488; *Morisey v. Brown,* 144 N. C., 154.   It is true
the exact amount of it was not determined at the time it was
given by the will, but, under the maxim, *Id certum est quod
certum reddi potest,* it could be rendered certain by deduct-
ing from the proceeds of the sale the amount of the other
legacies and the sum of $700 mentioned in item 2.   The bal-
ance, increased by the amount of the legacy given to the testa-
trix's brother, Frank Haywood, is the residue intended for
the church, subject, of course, to costs and expenses of admin-
istration.

We do not think the case of *Simms v. Garrot,* 21 N. C.,
395, so confidently relied on by the defendants, is an authority
in point or sustains their contention.   There the Court merely
decided that a lapsed general legacy did not fall into a resi-
due which was only partial in its nature.   But we are of the
opinion that on the face of this will there are clear indications
of what the true intention of the testatrix was.   It is evi-
dent that she was not *inops consilii,* but was acting under the
advice and guidance of some one very learned in the law.
The fact that she made specific provision that the legacy given
to her brother, who was old at the time she executed her will,
should fall into the residue bequeathed to the church tends
strongly to show that she knew what would be the legal conse-
quence if no such provision had been made by her.   If she
thought that it would go to the church if no special disposition
was made of it in the event of a lapse, why insert such a pro-
vision in the will?   If she thought it would not go to the
church, but would lapse as a legacy and go to the next of kin,
it would be strange indeed that she did not make a similar
provision in regard to the other legacies or any one of them,
if she intended the share of the church to be augmented by a
lapse.   The difference in the ages of her brother and her
nephews cannot materially affect or weaken this reasoning.
One of her nephews, John Bryan, did predecease her, and if

it was her purpose that his share should fall into the partial residue given to the church, why was not the will changed so as to effectuate this purpose, not merely to provide for a contingency, as she had done in the case of her brother, but for an event which had actually occurred? Her silence with respect to the Bryan legacy after it had lapsed by his death, together with the other reason first assigned, while perhaps not controlling in construing the will, should have their weight in ascertaining what was the will—the intent—of the testatrix. There are other and perhaps stronger reasons available to the next of kin of the testatrix to establish the correctness of their contention, but those already given we deem sufficient for the purpose.

We hold that there was a conversion of the lots into personalty by the sale thereof under the terms of the will (*Benbow v. Moore,* 114 N. C., 263; *Duckworth v. Jordan,* 138 N. C., 520), and the legacy to John Bryan lapsed by his death in the lifetime of the testatrix. His intended share must therefore be distributed among her next of kin. This accords with the ruling of the learned Judge who heard the case below. We have carefully examined all the authorities cited by the counsel for the church, and do not think they should change our view of the case.

Affirmed.