## L. J. STYLES v. RECEIVERS OF RICHMOND & DAN-VILLE RAILROAD COMPANY.

*Negligence and Contributory Negligence—Rule of the Last Clear Chance to Avoid an Injury—Liability of Master for Injuries to Servant—Disobedience of Servant.*

1. In all the cases decided by this Court in which the omission to improve the last clear chance to prevent injury is held to be a proximate cause, the liability of the defendant railroad companies is made to depend upon the question whether their servants negligently omitted to stop the train after plaintiff had placed himself in a perilous position. The same rule has been invariably applied to the injury of animals exposed on the track, and the rule so established is approved and affirmed.

2. While an employee may not be culpable for obeying the orders of a vice-principal, he is guilty of negligence if he does an act involving danger in disobedience to such orders. He cannot recover for an injury resulting from such disobedience. To hold otherwise would be unjust, unreasonable, and therefore contrary to law.

3. A section hand got off of the track to avoid an approaching train
and in doing so stepped upon some loose earth that had
accumulated from time to time in a cut; the dirt gave way
and he fell on the track and was injured by the train.   It was
error to instruct the jury under these circumstances that the
giving way of the dirt was the proximate cause of the injury,
and that the railroad company was liable for damages.   By
no conceivable act could the defendant's engineer have ren-
dered the earth solid after plaintiff got upon it, and the
defendant was only liable if its engineer neglected to use
reasonable precautions to prevent an injury after he saw the
perilous position of plaintiff.   (CLARK, J., dissented.)

CIVIL ACTION, tried before *Graham, J.*, at Spring Term,.
1895, of HAYWOOD Superior Court.

*Messrs. Ferguson & Ferguson*, for plaintiffs.
*Messrs. G. F. Bason* and *J. M. Moody*, for defendants.
(appellants).

AVERY, J. : The court instructed the jury that; " if the
plaintiff stepped from the track on to the embankment
in time to avoid a collision with the train and the
bank gave way on account of being loose dirt which
had slid into the road from time to time, and been permit-
ted to remain on the bed, then the giving away of the bank
would be the proximate cause of the injury, and the
defendant would be liable in damages for the injury."
This portion of the charge being excepted to, the question
is presented whether, if we concede that the defendant was
negligent in allowing the loose earth which had fallen
down from the sides of the cut and extended to the mar-
gin of the track at this particular place to remain there,
and also that the plaintiff had been careless in coming
back into the cut before the west-bound train passed, the
mere fact that the plaintiff stepped upon the loose earth
in time to avoid collision, if it had not given way, would

render the defendant liable whether the engineer saw, or could or could not by reasonable care have seen him, in time to stop the train, and notwithstanding the latter's previous want of care. The defendant did not have the last clear chance under any definition of the rule given by this Court, unless he could, by keeping a proper lookout, have seen the plaintiff's condition in time, with the appliances at his command, to have stopped the train and prevented the injury. The leaving of the earth in the cut was a fact accomplished, and, if the plaintiff went into the cut contrary to the command of his superior, (the section boss,) he was guilty of contributory and concurrent negligence. This instruction was not conditioned in any way upon the question whether the jury found that the plaintiff was negligent, or whether the want of care on the part of the defendant intervened as an operative cause after his carelessness. So that, though the jury may have reached the conclusion that the plaintiff went back into the cut contrary to orders, and also that the engineer could not, by the exercise of ordinary care, have discovered his perilous position after he took refuge on the pile of loose earth, they were still required, under this instruction, to find for the plaintiff upon the question of proximate cause. Was the plaintiff guilty of contributory negligence if he disobeyed express orders in returning into the cut before the west-bound train had passed through? The west-bound train was already an hour late, and the order of his superior, if the jury believed the testimony of the section boss, required the plaintiff to remain east of the cut till the train passed. Any instruction as to what was the proximate cause must have been given in full view of the possibility that the jury might believe the testimony of the section master. If he was believed, the order contemplated that

the plaintiff should at all events remain east of the cut till the train had passed.

The correctness of this instruction depends upon the ·definition of what is called the last clear chance, and we are therefore constrained to discuss that doctrine again. The principle as first formulated in *Davies* v. *Mann*, 10 M. & W., (Exc.) 545, and first laid down in this State in *Gunter* v. *Wicker*, 85 N. C., 310, was stated in the latter case as follows: "Notwithstanding the previous negligence of the plaintiff, if at the time the injury was done it might have been avoided by the exercise of reasonable care on the part of the defendant, an action will lie for damages." Ever since that time this Court has applied the principle only in cases where, after the negligent act of plaintiff was a fact accomplished, the defendant had an opportunity or chance to exercise care which, if improved, would have averted the accident. An illustration of the doctrine would be clearly shown here, if the jury had believed that the engineer, after seeing the plaintiff's perilous condition on the loose earth, could, by the use of the appliances at his command, have stopped the train. But the leaving of the loose earth, which constituted the defendant's first negligent act, was also a fact accomplished before the plaintiff started back through the cut. The defendant had no opportunity to prevent loose earth from following a natural law in giving way when a man threw his weight suddenly upon it. By no conceivable act or omission on his part could the earth have been held stationary after the plaintiff got upon it, and he was negligent in exposing himself to danger, unless the defendant omitted to do some act which, "*notwithstanding the previous negligence of the plaintiff,*" would have prevented his being injured. But how the defendant could have caused the earth to remain stationary after the antecedent act of the plaintiff in

exposing himself, it is impossible to conceive. It is an elementary principle that no person can be made to respond in damages for a *tort,* unless it is shown that the injury was caused by some wrongful act on his part, or might have been prevented in spite of all other operative causes by the discharge of some legal duty which he omitted to perform. The rule as stated by Judge COOLEY (in his work on Torts, pp. 70, 71) is quoted both in *Clark* v. *Railroad,* 109 N. C., 430, 449, and in *Pickett* v. *Railroad,* 117 N. C., 616, and is as follows: " If the original wrong only becomes injurious in consequence of the *intervention* of the *distinct wrongful act or omission by another,* the injury will be imputed to the *last wrong* which was the *proximate cause and not to that* which was *more remote.*" In its application to the case at bar, if the jury found that the negligent leaving of the loose earth " only became injurious " to the plaintiff because he went into the cut contrary to the orders of his superior, then, nothing more appearing, the plaintiff's carelessness was the operative cause. But, though he was negligent in going through the cut at the time or in the manner of his going, as the jury found the evidence to be, yet, if the engineer discovered, or might by keeping a proper lookout have ascertained, or had reason to believe, that the plaintiff was in peril in time to stop the train before reaching him at his place of refuge, the carelessness of the plaintiff only became injurious by reason of this subsequent omission of the defendant's servant, notwithstanding the previous want of care on the part of the plaintiff. What did the defendant do, or omit to do, that might have prevented the loose earth from moving?

In *Davies* v. *Mann,* the defendant was held liable because, after the plaintiff had tied his ass and left him exposed in the highway, the defendant's coach driver

STYLES v. RAILROAD.

could, by proper diligence, have stopped the coach in time to avert a collision and consequent injury. In *Pickett's case, supra;* in *Deans* v. *Railroad,* 107 N. C., 686; in *Clark* v. *Railroad, supra;* in *Little* v. *Railroad* and *Russell* v. *Railroad,* decided at this Term, and in every other opinion delivered by this Court, in which the doctrine that the omission to prove the last clear chance to prevent an injury is held to be a proximate cause, the liability of the defendant railroad company is made to depend upon the question whether its servant negligently omitted to stop its train after the plaintiff had placed himself in a perilous position. The same rule has invariably been applied in the numerous cases where an action has been brought to recover for injury to an animal exposed on the track. *Bullock* v. *Railroad,* 105 N. C., 180; *Carlton* v. *Railroad,* 104 N. C., 365; *Wilson* v. *Railroad,* 90 N. C., 69; *Snowden* v. *Railroad,* 95 N. C., 93; *Randall* v. *Railroad,* 104 N. C., 410, and other cases cited in *Pickett* v. *Railroad,* 117 N. C., at page 616. This case is not analogous to that of *Little* v. *Railroad,* at this Term, where it was held that the court ought to have instructed the jury, when requested to do so, that it was not negligence in the engineer to fail to stop his train after he saw that the plaintiff had taken refuge on the cap-sill of a trestle where the railroad hands had been in the habit of going and escaping all harm from the passing train. The loose earth was left in the ditch negligently, not as a place of refuge for persons exposed. If the engineer could have stopped his train after seeing plaintiff's exposed condition, it was his duty to do so and his fault to omit to discharge his duty. But he has no power then to stop the earth from moving, and his master incurred no legal liability for his failure to do so.

The rule has been laid down at this Term in *Russell* v.

118—69

*Railroad*, that, where the testimony is conflicting, it is the duty of the court to instruct the jury, upon request of counsel, whether, in any given phase of the evidence, a party charged with carelessness has in fact been negligent. There was testimony to support the theory that the plaintiff had exposed himself, contrary to the command of his superior, who was charged with the duty of directing the time and manner of making inspections. The plaintiff laid the foundation for the claim that he was not culpable in exposing himself when he offered testimony .tending to show that the section master was a vice-principal (*Logan* v. *Railroad*, 116 N. C., 940,) but, while he might have been without fault in incurring risk at the command of such a superior, he was not free from culpability if he exposed himself contrary to his orders. To hold, on the one hand, that the plaintiff would be free from culpability in exposing himself to danger which he had reasonable ground to apprehend, because he did so in obedience to the order of a superior who had the power to discharge him, and, on the other, that he would be likewise blameless if he should ignore orders, exercise his own judgment, and thereby subject himself to peril which he had equal reason to apprehend as a natural and probable consequence of his act, would be unjust, unreasonable and therefore contrary to law. Where a conductor warns a passenger not to incur the risk of getting off a train, he is culpable for disregarding the admonition. *Tillett* v. *Railroad*, 115 N. C., 662. But if the conductor advises or directs a passenger to enter or debark from a car, unless it is obviously perilous to do so, the direction excuses an act which might otherwise have been, in contemplation of law, negligent. *Hinshaw* v. *Railroad*, at this Term ; 2 Shearman & Red. Sec. 519, and note on page 55. Upon the same principle, the act of the plaintiff in going into the cut, if in viola-

tion of orders, would be more culpable, because the warning of a superior, whose duty it was to look after his safety as well as that of the passengers and crew on the train, afforded reasonable ground for apprehension on his part that danger might follow disobedience.

There being one phase of the evidence, at least, in which the plaintiff would be deemed negligent, the question of proximate cause or last clear chance depended on the findings upon and inferences drawn from the testimony. If, notwithstanding the negligence of the plaintiff, the jury find that the engineer saw, or might, by proper vigilance in keeping a lookout, have seen the plaintiff and would have had reason to believe, from his previous knowledge of the condition of the cut and of the surroundings, that he would be subjected to peril if the train should continue to move forward, it was negligence to fail to use all available appliances to stop it before reaching the point where the plaintiff had taken refuge upon the loose earth. It was the province of the jury ultimately to decide (*Russell v. Railroad, supra,*) whether the engineer exercised reasonable care, or such as the ideal prudent man would have exercised under such circumstances. There was testimony tending to show that the engineer might have stopped the train after the plaintiff's condition could have been seen and understood by him. Was the engineer in the habit of passing through the cut? Did he know that the earth, which had slided off the embankment, was insecure as a footing for one seeking safety from a passing train? If, in the exercise of such care as would have characterized a prudent man in the management of his own affairs, he would have had reasonable ground to believe that to persist in the effort to pass the plaintiff would be to subject him to peril, then the defendant company was answerable for his negligent failure to avail himself of the last clear

chance to avoid the injury. These are questions which may arise on another trial, and the jury must be left to determine whether, under all the circumstances, the engineer might, by the exercise of proper care, have seen that he was in peril and stopped the train in time to avert the accident.

For the error in charging that the leaving of the loose earth in the cut was deemed, in law, the proximate cause of the injury, the defendant is entitled to a new trial.

New Trial.

CLARK, J. (dissenting) : The last liability, or " last clear chance," as it is called, was with the defendant. Take the analogous case of a man walking on the railroad track at night, and who is run over by reason of the engine having no head-light. *Troy* v. *Railroad,* 99 N. C., 298. There, the walking on the railroad track at night is contributory negligence, and the negligence of the defendant in not carrying a head-light began before the act of the plaintiff, but it was a continuing neglect, and continued after the contributory negligence of the plaintiff, and was the proximate cause of the injury, for if there had been a head-light the plaintiff could, by the exercise of due diligence, have been seen in time to have prevented the injury, or the plaintiff would have seen the engine in time to have gotten off the track. Here the contributory negligence—if it was such—in going back through the cut when the train had failed to appear, was not the proximate cause of the injury. The plaintiff stepped off the track in full time to avoid being hurt, and his being in the cut was not *per se* the cause of the injury, but it was the treacherous condition of the earth which the defendant had allowed to slide down and fill up the side ditches. When the plaintiff, like a prudent

man, stepped off the track, he stepped upon this man-trap which the negligence of the defendant had prepared for him. As in the case of the engine running without a head-light, the negligence of the defendant began before the contributory negligence of the plaintiff, but it was a continuing negligence and supervened effectively after the contributory negligence of the plaintiff and .but for such negligence continuing till after the act of the plaintiff the attempt of the latter to save himself by stepping off the track on to the side would have been successful. This negligence of the defendant was, therefore, the " last act," or in other words the " proximate cause," of the injury. The mere going into the railroad cut, however could not in fact be contributory negligence. They are not *per se* dangerous places like trestles. The court, there-fore, committed no error in the instruction excepted to, which was, " If the plaintiff stepped from the track on to the embankment in time to avoid a collision with the train, and the bank gave way on acount of being loose dirt which. had slided into the road from time to time and been per-mitted to remain on the bed, then the giving way of the bank would be the proximate cause of the injury and the defendant would be liable in damages for the injury." It was the duty of the defendant to have this cut, through which the plaintiff as its track walker had to pass, in a safe condition. Its failure to do so was the proximate and effect-ive cause of the injury. The evidence is : " The loose dirt had fallen in the cut and filled it up over the ends of the cross-ties, and in many cases over the rails ........ and made a kind of embankment of loose earth. There was no place fixed for a track walker to get out of the way of a passing train." The plaintiff testified that, the train being late, he was walking through the cut again to see that everything was safe. He saw the train 50 yards off and

got out on the bank, which, being in a defective condition, slided down, carrying the plaintiff under the car wheel, his leg being cut off close to the hip, and other severe injuries being inflicted.     There is sufficient interval between the walls and the track, but the loose earth had slided in, filling it up to the ends of the cross-ties.     Soon after this accident the cut was cleaned out, and witnesses testified that a man now stepping off the track in the cut would be perfectly safe from any passing train.     The section foreman testified that he told the plaintiff to walk through the cut and back before the train came, to see that the track was safe, and that he gave the plaintiff no instruction what to do if the train was late.     The train being late, the plaintiff went through the cut again to see if all was safe, and on returning was hurt as above stated.     The conduct of the plaintiff shows neither contributory negligence nor disobedience of orders, but a faithful and intelligent compliance with the spirit of his instructions, which were to see that the cut was safe before the passage of the train.     His duty was to stand at the mouth of the cut to waive the engine down if the cut was not safe, and how could he do that when the train was over an hour late, except by again patrolling the cut?     He had done this and was returning to his post when the injury occurred, not from being in the cut, which was wide enough for his safety, but by the treacherous condition of the soil, which had slided in, and which the defendant had negligently permitted to remain in close and dangerous proximity to the track.     From the evidence the cut required frequent inspection, and, the train being detained, the plaintiff was in the discharge of his duty and disobeying no express orders when again passing through the cut.     It was the duty of the defendant to provide a safe place for its employees to work, and the cut as then filled up was unsafe for a track walker

STYLES *v.* RAILROAD.

who might be met in the cut, while inspecting the track, by a belated train, as plaintiff was.   The plaintiff had no knowledge of the danger, this being at night and his first tour of duty at that cut.   It was in evidence that the plaintiff took every precaution in patrolling the cut by stopping again and again to listen.   In *Owens* v. *Railroad*, 88 N. C., 502, it was held that the railroad was liable for injury to an employee caused by the sliding in of the dirt in a cut, if (as in the present case) the employee was not guilty of contributory negligence.

The court properly instructed the jury :   " If the plaintiff was instructed to watch the cut, and after waiting at the east end for a considerable time and finding the train did not come,. and knowing the condition of the weather and the condition of the cut and its liability to land slides, he went through the cut to the west end and then stopped and listened again, and not hearing the engine, he again entered the cut, and from time to time stopped and listened for the train and proceeded towards the east end, and about the middle of the cut the train came upon him and he attempted to get out of the way as alleged, and owing to the steepness of the bank of loose dirt and its soft condition, due to the excessive rains, he was thrown under the train and injured as alleged, then he was not guilty of contributory negligence."

The other exceptions are without merit.