CHARITY A. D. STRICKLAND, ADMINISTRATRIX, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 22 December, 1908.)

1. **Evidence—Map—Hearsay.**

   A map offered in evidence for the purpose of showing a negligent killing by defendant railroad company's train of plaintiff's intestate while on defendant's railroad bridge is inadmissible when it was made some eighteen months after the occurrence, upon the statements of one not produced as a witness.

2. **Railroads—Evidence—Scintilla.**

   Evidence of one who was hurrying across a railroad track at night, in front of a rapidly approaching train, that if the engine had a headlight he did not then see it, or afterwards, as he again looked, when the train was about two hundred yards away, is

scarcely sufficient upon the question of whether the defendant was negligent in running its train at night without a headlight.

3. **Railroads—Negligence—Evidence—Headlight—Causal Connection—Proximate Cause.**

In order to recover damages against a railroad company for the killing of plaintiff's intestate by a train negligently running at night without a headlight, there must be some evidence that the negligent act of defendant was the proximate cause of the death.

4. **Same—Contributory Negligence.**

In a suit for damages against a railroad company for negligently killing plaintiff's intestate there was evidence tending to show that deceased was killed on a certain night, not far from the end of defendant's bridge, by one of defendant's trains coming from the other side; that immediately after deceased passed the witness, the witness heard the whistle of the approaching train and the rumble of the train upon the bridge, when he was not in as favorable a position to hear as the deceased; that the deceased stopped, turned as if hesitating to enter the pump house, where the witness worked, and then walked towards the approaching train in an upright position, apparently in full possession of his faculties, upon the ends of the cross-ties; that deceased could have looked up and have seen the train coming, as the track was level and the view unobstructed; that there was no headlight on the engine of the train: *Held,* upon this evidence, uncontradicted, the deceased was guilty of contributory negligence, the proximate cause of the injury.

5. **Same.**

The negligent running of a train at night without a headlight is not the proximate cause of the death of plaintiff's intestate, when it appears from the uncontradicted evidence that deceased was in full possession of his faculties, was on the defendant's track at night, at a time he knew the train was scheduled to pass, must have known the train was approaching, had opportunity to get off in time to avoid the injury after hearing the signals and warnings of its approach, and when the engineer could not under the circumstances have stopped the train in time to avoid the injury. *Clark v. Railroad,* 109 N. C., 451, cited and approved.

6. **Contributory Negligence—Defense—Nonsuit.**

While contributory negligence is a matter of defense, it is proper to nonsuit upon plaintiff's own evidence, when the proof of such defense is thereby fully made out.

ACTION tried before *Lyon, J.,* at March Term, 1908, of NASH, for the recovery of damages for the negligent killing of George W. Strickland.

At the conclusion of the plaintiff's evidence, and again at the conclusion of all the evidence, the defendant moved to nonsuit, which motion was overruled, and the defendant excepted. The court submitted issues to the jury, which were found for plaintiff. From the judgment rendered the defendant appealed.

The facts are stated in the opinion of the Court.

*Austin & Grantham* and *Battle & Cooley* for plaintiff.
*F. S. Spruill* for defendant.

BROWN, J.  The defendant's counsel bases his motion to nonsuit upon three grounds:

"*(a)* That there was no evidence of negligence on the part of the defendant.

"*(b)* That it was the duty of the court to instruct the jury, upon the uncontradicted evidence of the plaintiff, to answer the issue as to contributory negligence 'Yes.'

"*(c)* For that, even granting the negligence of the defendant, the plaintiff's intestate was also guilty of negligence upon the uncontradicted evidence of the plaintiff; and the court having no disputed evidence to find, the plaintiff's evidence clearly established the intestate's negligence, which was the concurrent cause of intestate's death, and therefore that the plaintiff could not recover."

The evidence of the plaintiff tends to prove that her husband was killed on Thursday night, 21 June, 1906, not far from the southern end of the defendant's bridge across Tar River, about one mile north of Rocky Mount.

Whether he was killed by passenger train No. 85, which crossed the bridge at 11 o'clock that night, going south, is left in doubt by the position of the body, the state of the undergrowth and conditions under which the body was found. But for the purposes of this appeal we assume that he was struck by the engine of train No. 85 and killed, as contended by the plaintiff.

There is no evidence whatever that the deceased was stricken or killed while on the bridge structure. All evidence in the record tends to prove that the body was found about seven yards south of the bridge abutments, and when the evidence of defend-

ant's witnesses, Davis and Fountain, is considered, that fact is established beyond question.

The plat made by Wells, the surveyor, which was excluded by the court, proves nothing, as it was made some eighteen months after the casualty, and only upon the statements of one M. T. Strickland, who was not examined as a witness. Assuming that the witness Wells meant G. H. Strickland, there is nothing in his testimony which would warrant a jury in finding the deceased was killed on the bridge.

Upon the question of negligence it is contended that the engine of train No. 85 had no headlight burning, and that with a headlight the engineer could have stopped in time to save the deceased.

The only evidence of that relied upon by plaintiff is the testimony of Frank Whitley. He states that he crossed the track at 11 o'clock, at Shore's Crossing, some 400 or 500 yards south from the railroad bridge. The train passed a few minutes after he crossed the track. He noticed the train. It was 150 or 200 yards off when he crossed the track. If there was a headlight on it he could not see it. Witness does not say he was looking for a headlight, but was a casual passer, hurrying across the track in front of a rapidly approaching train. When it passed him he was going away from the track, and when he noticed it the train was 200 yards distant. Such negative testimony, standing alone, has scarcely probative force sufficient to establish any fact.

But assuming that the defendant's agents were guilty of negligence in respect to the headlight, there is no evidence that such negligence was the proximate cause of the death of the intestate. Had the headlight been burning, it would not have prevented the injury, either by warning the deceased or by enabling the engineer to discover his peril in time to stop.

The only witness examined whose testimony throws any light on the subject is plaintiff's witness, Robert Smith. He was standing in the door of the pumping station, 15 yards south of the bridge, at 11 o'clock P. M. He saw a tall man, supposed to be the deceased, in his shirt sleeves, "walking pretty slowly" towards the bridge, when he passed the pumping house, where

he slowed up, as if he would come in, but went on. He was not walking on the track, but on the side "tiles" or ties. After he saw him witness stood in the door "just a minute," and turned around to his work; then as he turned back in the house, witness heard the train crossing the bridge. It was No. 85. The witness says "the man could look up and see the train coming." Witness had then just heard the engineer's signal blow for the station just before the train entered on the bridge.

If the deceased was in the possession of his faculties—and there is no evidence he was not—by exercising the most ordinary precaution he must have both seen and heard the train coming. In addition, he knew its schedule and that it was at that moment due at the bridge. The pump hand heard it blow as deceased passed his station, and when it entered on the bridge he also heard its noise. At that time the deceased had barely passed the pump station, walking very slowly on the ends of the crossties. So the deceased had all the warning that any sane person needed. As he was not prostrate on the track, but walking upright towards the train and on the end of the ties, the engineer had the right to assume up to the last moment that the deceased saw or heard the approaching train and that he would step aside and save himself. There was nothing to prevent it, as the track was along the flat ground when deceased must have heard or seen the train approaching. Even the top of the abutments of the bridge are only six feet from the ground—not as tall as the deceased. *Stewart v. Railroad,* 136 N. C., 385; *Norwood v. Railroad,* 111 N. C., 236; *High v. Railroad,* 112 N. C., 385; *McAdoo v. Railroad,* 105 N. C., 140; *Clegg v. Railroad,* 132 N. C., 292; *Morrow v. Railroad,* 147 N. C., 623.

And when at last the engineer saw or might have seen that the deceased did not intend to stop, but was entering upon the bridge or trestle—if indeed he ever did enter upon it—it was impossible for him to have stopped his train before striking him. The dissenting opinion of the present Chief Justice in *Clark v. Railroad,* 109 N. C., 451, strongly presents this view and sustains fully the positions taken by defendant in this case.

In the *Clark case* the deceased was actually killed midway the trestle, and the majority of the court held that there was

some evidence tending to prove that the engineer by reasonable care could have seen his peril in time to stop. But both opinions recognize the rule stated by *Justice Clark,* that "When the engineer sees a man, not known by him to be deaf, drunk or insane, walking on the track, he has ground to believe that on sounding the whistle the man will get off the track in time. He is not compelled to slacken the speed of the train on that account."

In this case, according to plaintiff's own evidence, the whistle was blown just as the train reached the bridge, and it was heard by the pump hand as deceased passed the pump station going in direction of the train, and almost immediately thereafter the pump hand heard the rumbling of the train as it entered on the bridge. The engineer, had he seen deceased, was not obliged to slacken speed, and had a right to suppose that he would step off the track, as he had every opportunity to do. Certainly the engineer had a right to suppose that no sane man would go on the bridge, when he must have known the rapidly moving train was about to enter it. As the bridge was only 198 feet long, all the testimony shows that the train could not have been stopped within that space.

Therefore it follows that, as deceased had knowledge of the approaching train and opportunity to step off the track, and as the engineer, had he seen him approaching, walking along the track, was not obliged to stop, the absence of a headlight, if it was absent, was not the proximate cause of the injury.

We might well stop here in the consideration of this case, but the proof of contributory negligence developed in the plaintiff's own evidence is so strong that, upon well-established principles, it must bar a recovery, even if there was no headlight. It is true that contributory negligence is a defense, but where proof of such defense is fully made out by plaintiff's own evidence, it may be availed of by motion to nonsuit.

As we have seen, the deceased was not on the bridge when the swiftly moving train approached it. No witness saw him nearer to it than ten or fifteen yards. His body was found twenty feet from its abutments on the south side, and it is admitted deceased was going north. He was neither drunk nor helpless, but supposedly in the full possession of his faculties, a trespasser upon

defendant's track, facing a signboard warning him to keep off, and approaching a railway bridge, 192 feet long and 20 feet above water, for the purpose of crossing it at 11 o'clock at night, at a time when he knew the train was due and about to enter the bridge. As the deceased was sane, this was, *per se,* negligence of the most pronounced and unjustifiable kind. *Carter v. Railroad,* 135 N. C., 498; *Arrowood v. Railroad,* 126 N. C., 629; *Weeks v. Railroad,* 131 N. C., 78.

As he approached the bridge did the deceased know the train was coming? Number 85 was a regular train, usually on time, and due at that bridge at 11 o'clock P. M., the very time the deceased passed the pump station. He was so familiar with the running of defendant's trains that, according to the testimony of his wife, the plaintiff, "he knew the schedule of every regular train that ran over the railroad."

Did the deceased see or hear the train approaching? If he used his faculties he must have both seen and heard it. The track was straight, and plaintiff's witness Whitley saw the train coming 200 yards north from Shore's Crossing, which is 400 yards south of the bridge. This shows that the train could be seen some distance off. The plaintiff's witness Robert Smith heard the train blow about time deceased was opposite the pumping station, fifteen yards from the bridge, and in one minute thereafter he heard it enter on the bridge.

The deceased had a far better opportunity to both see and hear it than Smith, for deceased was on the end of the crossties, while Smith was in a house filled with the din of machinery. Before the deceased reached the bridge he knew the train was due there at that moment, and by the exercise of the most ordinary care, "by looking up," as plaintiff's witness says, he could have known it was actually on the bridge. If he entered on it under such circumstances he invited death, for the bridge is too short for the engineer to stop his train in time to save him had the engineer discovered or by due care could have discovered his peril. In fact, according to the evidence, the engineer could not have stopped his train, had he undertaken to do so before he entered upon the bridge, until he had passed some distance beyond the pump station, for the distance from the

north abutment of the bridge and across the bridge to the pump station is only 243 feet, while the shortest distance, according to the evidence, in which train No. 85 could have been stopped is one thousand feet—four times as great. So we see how impossible it is for the plaintiff to recover upon well-settled principles of law in any view of the evidence, whether the deceased was struck by the engine on the bridge structure, or on the track south of it, or on the approaches to the structure. Assuming that the engine had the most brilliant of headlights, and that the engineer actually could see through and beyond the bridge, and that he actually saw deceased as he slowly passed the pump station, having blown his whistle, as heard by Robert Smith, as the train entered the bridge, the engineer had a right to assume that the deceased heard it and would step aside. If the deceased, after the whistle blew, under such circumstances had entered the bridge, it was too late to stop the train.

It is not hard to account for the fact that the engineer did not know when his engine struck the deceased. The latter was not in the middle of the track and run over and his body torn and mangled by the train passing over it. But his body was found on the side of the track, and as he was walking on the end of the cross-ties, he was doubtless knocked off by some jutting part of the rushing engine as it passed him. The deceased was evidently hit suddenly on the head and knocked off the edge of the track, for his neck was broken as well as his right arm, which was next to the engine.

The evidence in this case presents one of those unfortunate catastrophes which excites sympathy for this unfortunate plaintiff, but upon her own showing we feel bound to exculpate the engineer and to hold, in accord with a long line of well-considered precedents, that the defendant company is not liable.

The court below erred in refusing the motion to nonsuit.

It is so ordered.

Reversed.