ANNIE HILL, ADMINISTRATRIX, v. NORFOLK SOUTHERN RAILROAD COMPANY AND ATLANTIC AND NORTH CAROLINA RAILROAD COMPANY.

(Filed 27 October, 1915.)

**1. Railroads—Negligence—Pedestrian—Presumptions.**

An engineer is not required to stop or slacken the speed of his running train upon seeing a pedestrian ahead of him on the track, in the apparent possession of his strength and faculties, and without information to the contrary; for he may act on the assumption that the pedestrian will use his own faculties for his own protection and will leave the track in time to save himself from injury.

**2. Same—Helpless on Track—Duty of Engineer.**

It is the duty of an engineer on a moving train, by reasonable watchfulness, to discover a man in front lying on the track or sitting on the cross-ties, in a helpless condition, or in a position of such evident peril that ordinary efforts on his part if exerted would not likely save him from injury, and when such conditions are or should be observable by the engineer in the exercise of proper care and observation, he should stop the train by every available means short of endangering the lives of his passengers, resolving all doubts in favor of the preservation of human life.

**3. Same—Trials—Evidence—Nonsuit—Questions for Jury.**

In an action to recover damages of a railroad company for the wrongful killing of the plaintiff's intestate at night, there was evidence tending to show that the intestate was subject to epilepsy, and at times liable to attacks in which he would lose consciousness and fall, one of the fits having occurred the day before he was killed; that the track at the point at which the intestate was killed and for a mile and a half was straight; that the intestate was killed at a place upon the track where one standing upright could have been seen by a witness who was looking down the track at the headlight of the approaching train that killed the deceased, and who could not have seen the deceased had he been lying down on the track at the time, and that this witness saw no one there. *Held,* evidence sufficient to be submitted to the jury upon the question of whether the intestate, at the time he was killed, was in a helpless condition on the track, or whether the defendant's engineer, in the exercise of the care required, should have seen him and stopped the train in time to have avoided the injury.

BROWN, J., dissents. WALKER, J., concurs in dissenting opinion.

APPEAL by plaintiff from *Rountree, J.,* at the November Term, 1914, of LENOIR.

Civil action to recover damages for the alleged killing of intestate by defendant company. At close of plaintiff's evidence, on motion, there was judgment of nonsuit, and plaintiff excepted and appealed.

*Loftin, Dawson & Manning, G. V. Cowper for plaintiff.*
*Rouse & Land for defendant.*

HOKE, J. It has been repeatedly held in this State that the "railroad engineer of a moving train who sees on the track ahead a pedes-

trian, alive and in the apparent possession of his strength and faculties, the engineer not having information to the contrary, is not required to stop his train or even slacken its speed because of such person's presence on the track. Under the conditions suggested, the engineer may act on the assumption that the pedestrian will use his faculties for his own protection, and will leave the track in time to save himself from injury" (*Abernethy v. R. R.,* 164 N. C., p. 91, citing *Talley v. R. R.,* 163 N. C., pp. 567 and 570; *Exum v. R. R.,* 154 N. C., 408; *Strickland v. R. R.,* 150 N. C., 4; *Beach v. R. R.,* 148 N. C., 152), a position that has been allowed to prevail where the person injured was sitting down on the track or cross-ties, apparently alert and attentive, and with nothing to indicate that he was unconscious of the train's approach. *Holder v. R. R.,* 160 N. C., p. 3, citing *Clegg v. R. R.,* 132 N. C., p. 293; *McAver v. R. R.,* 129 N. C., p. 380; *Hord v. R. R.,* 129 N. C., p. 305, and *Upton v. R. R.,* 128 N. C., p. 173. Again, it was held, among other things, in *Dean's case,* 107 N. C., p. 686: "If the engineer discover, or by reasonable watchfulness may discover, a person lying on the track asleep, or drunk, or see a human being who is known by him to be insane, or otherwise insensible to danger, or unable to avoid it, upon the track in his front, it is his duty to resolve all doubts in favor of the preservation of life, and immediately use every available means, short of imperiling the lives of passengers on his train, to stop it," a principle approved by this Court in many decisions on the subject, *Smith v. R. R.,* 162 N. C., p. 29; *Edge v. R. R.,* 153 N. C., p. 212; *Sawyer v. R. R.,* 145 N. C., p. 24; *Whitesides v. R. R.,* 128 N. C., p. 229; *Lloyd v. R. R.,* 118 N. C., p. 1010; and extended to include the case where one was sitting on the cross-tie, and it was evident from his position or otherwise that he had no present control of his faculties, *Henderson v. R. R.,* 159 N. C., p. 581; *Smith v. R. R., supra;* and, also, when he was in a position of such evident peril that ordinary effort on his part was not likely to save him from injury. *Snipes v. Manufacturing Co.,* 152 N. C., pp. 42 and 46, citing, among others, *Clark's case,* 109 N. C., pp. 430-33-34, and *Bullock's case,* 105 N. C., 180.

Considering the evidence in the light of these decisions, we are of opinion that there was error in the order of his Honor directing the nonsuit. As we understand the record, and under the rule uniformly observed, that when a nonsuit is ordered the testimony making for plaintiff's right of action must be taken as true, and viewed in the aspect most favorable to him, there were facts in evidence tending to show that on or about 23 December, 1911, in the early part of the night of that day, the intestate was run over and killed by a passenger train of defendant coming from Kinston towards LaGrange; that at the point of the killing the railroad track was nearly level and

straight for a distance of 1½ to 2 miles from Fields Station beyond, to the point where intestate was killed; that a short while before the killing, a witness saw the intestate and talked with him, and he was then sober and was going down the railroad, or on a path along the side of the track, just about train time, and was killed about 200 yards from Dawson's Crossing, a place where the county road crosses the railroad.

A witness by the name of Noah Colie, testifying for plaintiff, said, among other things, that at the time of the killing he was driving along the county road in a buggy, coming from LaGrange, and as he came near the crossing, his mule being afraid of the train, he got out of the buggy to hold his mule and was looking down the track towards the train; that he could see the headlight of the engine for two miles from the time it came around the curve at Fields Station, the road being straight for a mile and a half, and he could see practically right down the track, and was looking towards the train, and if a man had been walking along the track or standing up he could have seen him, but if he had been "lying down he could not have seen him" at the point where he was killed, because there was a cut there, "gradually growing lower," that shut off the view when the man was lying down. This point was about 200 yards from where he was standing, and between him and the approaching train. In the language of the witness on this point: "When I saw the train coming around the curve, my point of view was practically right down the track; in other words, I was looking right down the track towards Mr. Fields. I did not see anybody," and again: "I could not see a man when he was lying down, where the accident occurred, because the cut there obstructed my view."

Another witness, by the name of Thomas, testified that at a subsequent time he had gone to the place with the witness Colie, and, standing where Colie was, he "saw a man walking down the track towards Kinston from the point where Mr. Colie was to where Mr. Hill was killed, but, when he lay down on the track at that point, he was out of sight; you could not see him. You could see him when he stood up, but could not see him when he lay down."

It was further proved that, latterly, the plaintiff, while ordinarily a strong man and able to work, was subject to epilepsy, and was, at times, liable to attacks in which he would lose consciousness and give way; that he had had such an attack the day before he was killed, and witnesses said that, in the times they had seen him so, he would have fallen if he had been by himself or not in some way supported, etc., etc.

True, our decisions are to the effect that when it is shown merely that a person on the track of a railroad company, without license, express or implied, has been run over and killed by one of its trains, liability may not be imputed (*Clegg v. R. R.,* and authorities cited); but

the present case cannot be brought within any such principle. As the case goes back for another trial, we do not consider it desirable to dwell at length on the evidence offered in support of plaintiff's claim, but on testimony for plaintiff tending to show that a witness was looking down a straight track for a mile and a half to two miles, seeing the headlight of the engine for that distance; that the deceased was run over and killed between the witness and the approaching engine; that he could have seen the deceased if he had been standing up, and did not see him, but, at the point where he was killed, the witness could not see him when lying down, owing to a small cut on the railroad, and the witness, 200 yards off, standing just to one side of the track, on the county road, and the further fact stated, that the deceased had of late developed a case of epilepsy, throwing him at times into spells or fits which were likely to render him unconscious and cause him to fall, and that he had just had such an attack the day before, we are of opinion that there are facts in the record, amounting to legal evidence, and which tend to show that the deceased, at the time he was killed, was down and helpless on the track, and that this and the issue as to defendant's liability must be referred to the jury for decision. *Barnes v. R. R.,* 168 N. C., p. 512; *Tyson v. R. R.,* 167 N. C., p. 215; *Smith v. R. R., supra; Arrowood v. R. R.,* 126 N. C., p. 629; *Powell v. R. R.,* 125 N. C., p. 371.

There was error in the order of nonsuit, and the same will be set aside and the cause submitted to the jury.

Error.

BROWN, J., dissenting: I fully agree with the opening citation in the opinion of the Court from the *Abernathy case.* It is the well-settled law of this State. Applying it to the evidence of this case, I am of opinion that the learned judge of the Superior Court did not err in sustaining the motion to nonsuit. A careful examination of the evidence set out in the record, in my opinion, fails to disclose any real evidence that the plaintiff's intestate was lying down helpless upon defendant's track, and while in such condition was run over and killed by a train.

The burden of proof is upon the plaintiff to prove by the clear weight of the evidence:

1. That the deceased was down on the track in an apparently helpless condition.

2. That the engineer could have discovered him in time to stop the train before reaching him, by the exercise of ordinary care.

3. That he failed to exercise such care, and as a direct result, deceased was killed. *Clegg v. R. R.,* 132 N. C., 294; *Henderson v. R. R.,* 159 N. C., 581; *Holder v. R. R.,* 160 N. C., 7; *Stout v. R. R.,* 132 N. C., 416; *Ward v. R. R.,* 167 N. C., 148.

There is nothing worthy of the name of evidence that tends to prove the first of these propositions. What is offered as evidence is only the merest conjecture and surmise. Because the intestate was subject- to occasional fits of epilepsy is no evidence that on this occasion he was seized with an attack and fell helpless upon the track. The fact that his body was mangled is likewise no evidence that he was prostrate and helpless upon the track when the engine struck him. There is nothing in the evidence inconsistent with the theory that the intestate may have been walking or sitting on the track when struck by the engine, or with the theory that he may have fallen upon the track when it was too late to stop the engine.

There is evidence that the track was straight, and that the headlight of the engine could be seen at some distance, but there is no evidence that the engineer could have discovered the figure of a man prone upon the track in time to have stopped the train. What is assumed to be evidence is mere guess-work.

MR. JUSTICE WALKER concurs in the dissenting opinion.