Civil action to recover damages for personal injuries. The issues submitted to the jury were answered as follows:
1. Was the plaintiff injured by the negligence of the defendants, as alleged in the complaint? Answer: Yes.
2. Did the plaintiff by his own negligence contribute to his injury? Answer: Yes.
3. Notwithstanding the negligence of the plaintiff, could the defendants have avoided the injury by the exercise of ordinary care? Answer: Yes.
4. What damage, if any, is the plaintiff entitled to recover? Answer: $5,500.
From judgment upon the verdict defendants appealed to the Supreme Court.
On 17 December, 1925, plaintiff, at that time about twenty years of age, was employed by Howard Construction Company as a truck-driver. On said day he was engaged in hauling crushed stone from cars placed by defendant, Southern Railway Company, on its side-track at Nantahala, in Swain County, North Carolina. These cars had been placed on the side-track by defendant in order that their contents — crushed stone — might be unloaded therefrom and hauled on trucks by employees of Howard Construction Company out on Highway *Page 106 
No. 10, where said company was engaged in the performance of its contract with the State Highway Commission for the construction of said highway.
During the morning of said day plaintiff had driven his truck to said cars for the purpose of loading same with crushed stone. While waiting to get his load, plaintiff and other employees of Howard Construction Company, who were there for the same purpose, built a fire near the side-track. It was a very cold day, and said employees stood and sat about the fire to keep warm. Soon after eating his dinner, plaintiff sat down on a cross-tie of the side-track, under the edge of an empty car. He leaned against the rail, extending his arms on both sides, so that his hands rested on the rail. His legs and body projected out from under the car about three feet toward the fire. A number of his fellow-employees — about twelve or fifteen — were standing about the fire, near the cars on the side-track. They were all laughing and talking, waiting for the trucks to be loaded. Some of the cars had been unloaded, and were empty.
While plaintiff was sitting under the edge of the car, one of defendant's engines came from the main line into the side-track for the purpose of removing therefrom cars which had been unloaded. This engine approached the car under which plaintiff was sitting at a rate of speed not exceeding five miles per hour. One of defendant's employees, at work about the engine, called to the men about the fire, warning them of the approach of the engine. No signal was given by bell or whistle that the engine had come upon the side-track and was about to couple up with the empty cars. The engine struck the car under which plaintiff was sitting and caused its wheels to run upon and injure his hand and arm. As the result of this injury plaintiff's left arm has been amputated near the shoulder.
Plaintiff, as a witness in his own behalf, testified as follows: "I don't know that a man on the train could have seen me, but he could have seen my feet and legs sticking out. A man could see my legs and my body. There was a whole crowd standing there around the fire — ten or twelve. They were standing all around the fire by me. All were not standing in front of me. I was lying back with my hands on the track under the car. Men were standing on both sides of the fire. I was just lying down like that, with my shoulders against the rail. I thought that if they came into the side-track they would ring a bell or blow a whistle and give us signals to keep out of the way. I was just sitting there, and never thought of any train coming in without giving a signal or ringing a bell. I thought I could sit there until it came time for my truck to be loaded. I did not hear the train, and did not know that an engine had come on the track until the car moved and the wheel caught *Page 107 
my hand. There are no buildings between the point where the sidetrack joins the main line and the point where I got hurt. I don't think there were any trees or forest that obstructed the view. This side-track is four or five hundred feet long and is straight from where it leaves the main line."
Jim Wimpey, witness for plaintiff, testified as follows: "The conductor and engineer were both on the opposite side from where plaintiff got hurt; they were on the upper side on the right, and the plaintiff was on the lower side. Most of the men who were working about those cars were on the left side. Just as soon as the train that was coming in on the side-track struck the other car, I heard a man holler — right all in an instant. The other boys, truck-drivers, were waiting for their work to start again and their trucks to be loaded. Earl Orr (the flagman) could have seen part of these men on the lower side, but I don't know whether he could have seen all of them or not."
Bob Mease, witness for plaintiff, testified as follows: "The accident occurred something between 1 and 2 o'clock, fast time. I was standing around the fire when Mr. Wimpey hollered to me. This was the same fire where plaintiff was. He was leaning back against the rail the last time I saw him. His hands were on the rail. He was not back under the car, he was leaning against the rail, under the edge of the car."
There was evidence sufficient for the jury to find therefrom that defendants were negligent as alleged in the complaint, in that defendants ran an engine from the main line into the side-track on which cars were standing with employees of Howard Construction Company present, in and about said cars, for the purpose of unloading same, without giving warning of the engine's approach by ringing the bell or blowing the whistle — the means usually adopted for giving such warning under these conditions, and that this negligence caused plaintiff's injury. Ray v. R. R.,141 N.C. 84.
There was also evidence from which the jury could find that plaintiff was negligent in that he sat down upon the track, under the edge of an empty car and remained there for as long as five minutes, with knowledge that the car was empty and that defendant would probably bring its engine into the side-track for the purpose of moving said empty car therefrom, in accordance with its daily custom, and that this negligence of plaintiff contributed to his injury. Watts v. R. R., 167 N.C. 345.
Defendants rely upon Watts v. R. R., supra, as decisive of their assignment of error based upon an exception to the refusal of their motion for judgment as of nonsuit. Upon plaintiff's appeal to this Court the judgment as of nonsuit was affirmed. Plaintiff in that case "was under the car for his own purposes, on a live track, engaged in the performance of no duty whatever, awake and in full possession of his *Page 108 
faculties, and utterly inattentive to his own safety to the very time of his injury." It was held, in the opinion written by Hoke, J., that a typical case of contributory negligence, concurring with that of defendant, and barring plaintiff's claim for damages, was presented. Ward v. R. R.,167 N.C. 148. The facts which the evidence in the instant case tends to establish, distinguish this case from Watts v. R. R. In that case there was no evidence from which the jury could find facts to which the doctrine of the "last clear chance" was applicable. In the present case the evidence tends to show that plaintiff was on the premises of defendant, Southern Railway Company, as a licensee, at least; that the engineer and conductor knew when they ran the engine from the main line into the side-track that employees of Hudson Construction Company were engaged in unloading the cars on the side-track, and were then in and about said cars for that purpose.
It was clearly the duty of the engineer under the circumstances shown by the evidence, not only to give timely warning of the approach of the engine, but also to exercise reasonable care to ascertain the situation of the men in and about the cars in order to avoid injuring them, or any one of them. There is evidence from which the jury could find that by exercising such care, he could have seen plaintiff sitting on the cross-tie under the edge of the car, with his legs projecting about three feet beyond the car, and that he could have seen plaintiff in this situation in ample time to have stopped the engine, and thereby have avoided the injury. The failure of the engineer, or of other employees of defendant to perform this duty was the proximate cause of the injury. The instant case is governed by the law as declared in Hudson v. R. R., 142 N.C. 198, and in Moore v. R.R., 185 N.C. 189, rather than by Watts v. R. R., supra.
There was no error in the refusal of the court to allow the motion for judgment as of nonsuit.
Nor was there error in submitting the third issue to the jury. The doctrine of Davies v. Mann, 10 M. and W. (Exc.), 545, was approved by this Court in Gunter v. Wicker, 85 N.C. 310, and has been since consistently followed and applied, when notwithstanding plaintiff's contributory negligence, the evidence tended to show that defendant could by the exercise of reasonable care have avoided the injury to plaintiff. There was evidence in this case from which the jury could find facts to which the doctrine is applicable. The burden upon the third issue was on plaintiff.Hudson v. R. R., 190 N.C. 116; Lea v. Utilities Co., 178 N.C. 509; Coxv. R. R., 123 N.C. 604. The evidence tending to sustain the affirmative of the issue was properly submitted to the jury under instructions to which there are no exceptions.
The judgment is affirmed. We find
No error. *Page 109