The evidence tended to show that plaintiff's intestate, Redmon, was traveling in a Ford roadster truck on Bridge Street, the car being a left-hand drive. Bridge Street crossed the tracks of the railroad at grade. There is a North Carolina stop sign near the crossing, and the jail and a wholesale house are situated near the tracks. The jail is about forty-seven feet from the track, and the wholesale house about twenty-three feet from the track. Redmon was traveling south. A witness for plaintiff named King was approaching the same crossing and was traveling in a truck behind Redmon. As the witness approached within 15 or 20 feet of the railroad track he attempted to pass Redmon and saw the train coming and stopped his car. Witness said: "I came to a stop and looked back at Redmon's car to see if he was looking — I did not know at the time that he was starting across the tracks — and I turned my head and looked at the train again, and when I looked back at Redmon the *Page 765 
train struck him. He was almost across the railroad tracks. . . . The train was something like four rails from Mr. Redmon as he went on the tracks. I think the regular railing is something like 30 to 33 feet. . . . The train was running, I suppose, or making from 30 to 35 miles. . . . No whistle was blown before that crossing was reached by the train that I heard of; no bell was ringing. . . . The engineer did not make any effort to stop that train before striking Mr. Redmon, that I could tell, and at the time of this accident the engineer was not in the position usually occupied by the engineer. . . .When I was within 25 or 30 feet of the track I saw the train the first time at the upper bridge, I think, there. I don't remember how many steps it was, but it was something like 150 or maybe 175 yards. . . . Redmon was closer to the track than, I was, and being ahead of me he could have seen, for at that time his view was clearer than mine. . . . . I did not see him look; he was in front of me, and he did not stop his car. He could have seen, at a point 25 feet from the track, a train approaching at 150 or 175 yards."
Witness Andrews, who was an eye witness, testifying for plaintiff, said: "I guess I could have seen up to the depot three or four yards when he got to the track. It was straight. The rails of the track are about 4 feet 8 1/2 inches apart. Redmon's Ford truck was 10 or 11 feet long. Redmon, while at the hospital, told his son that he did not see the train and did not hear any noise at all, and that he did not know he had been hit with the train until afterwards they told him." The collision happened about noon 31 July, 1926, and Redmon died as the result of his injuries on or about 9 August, 1926.
The engineer testified: "When I first saw Mr. Redmon approaching in his automobile, my train was about 125 yards when I first saw him. I guess he was about 30 feet from the railroad track — something like that. I was traveling about 20 or 25 miles an hour, and Mr. Redmon was traveling at a rate of speed of about 4 or 5 miles an hour, going very slow; he was going toward the crossing. When Mr. Redmon drove up on the track I guess I was within 40 feet of the crossing. When he started across in front of me from the time he drove up on the track 40 feet in front of me it was impossible for me to stop my train without hitting his car. . . . My train was coming down the river, down grade, the river grade. My train of 60 cars consisted of, I think, 5 loaded and 55 empties that we had. The size engine I was driving that day was. . . . the largest on wheels — the largest type that is used."
Several witnesses testified that signals were given, and others testified that they heard no signal. The engineer testified that: "It takes one, two or three seconds for the brakes to take hold." The engine was *Page 766 
30 feet long, and the cars from 36 to 38 feet. There was no evidence as to the distance in which a train of this character and making the speed testified to, could have been stopped except the statement of the engineer that after putting on brakes he stopped about 150 yards from the crossing. A witness, Watson, who was a brakeman in the employ of the defendant at the time, apparently testified in a former trial that in his opinion a train going 45 miles an hour could be stopped within a distance of 100 to 150 yards, but the same witness modified the statement by saying that he had not run an engine, and was asked to give an estimate and stated: "I can't give my opinion as to a train going 35 miles an hour: I don't mean I won't give it; I don't know; I have not opinion about it."
At the conclusion of the evidence the defendant tendered the usual issues of negligence, contributory negligence and damages. The court, however, submitted an issue as to last clear chance, and the defendant excepted. The jury found that the defendant was guilty of negligence, and that the plaintiff was guilty of contributory negligence, and further found the issue of last clear chance in favor of plaintiff and awarded damages in the sum of $3,500.
From the judgment upon the verdict the defendant appealed.
When must the trial judge submit an issue of last clear chance to the jury? The last clear chance doctrine is the duty imposed by the humanity of the law upon a party to exercise ordinary care in avoiding injury to another who has negligently placed himself in a situation of danger. The doctrine is said to have sprung from the celebrated case of Davies v. Mann, 10 M. W., 546, decided in 1842, and is commonly known as the hobbled ass case. An excerpt from that case is as follows: "The defendant has not denied that the ass was lawfully in the highway, and therefore we must assume it to have been lawfully there; but even were it otherwise, it would have made no difference, for as the defendant might, by proper care, have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there." The principle announced has been clearly stated by Stacy, J., in Haynes v. R.R., 182 N.C. 679, 110 S.E. 56, as follows: "It has been held uniformly with us that, notwithstanding the plaintiff's contributory negligence, if the jury should find from the evidence that the defendant, by the exercise of ordinary and reasonable care, could have avoided the injury, and *Page 767 
failed to do so, and had the last clear chance to so avoid it, then the defendant would be liable in damages." To the same effect is the utterance of Brown, J., in Cullifer v. R. R., 168 N.C. 309, 84 S.E. 400: "It is well settled in this State that where the plaintiff is guilty of contributory negligence the defendant must exercise ordinary care and diligence to avoid the consequences of the plaintiff's negligence, and if by exercising due care and diligence the defendant can discover the situation of the plaintiff in time to avoid injury, the defendant is liable if it fails to do so." Again in Ray v. R. R., 84, 53 S.E. 622, Hoke, J., said: "The authorities are to the effect that if the plaintiff is at the time rightfully upon the track or sufficiently near it to threaten his safety, and is negligent, and so brought into a position of peril, if the defendant company by taking a proper precaution and keeping a proper lookout could have discovered the peril in time to have averted the injury by the exercise of proper diligence, and negligently fails to do it, the defendant would still be responsible, though the plaintiff also may have been negligent in the first instance."
The application of the principle was denied in Herring v. R. R.,32 N.C. 402, although the case of Davies v. Mann was cited in the brief. The Herring case involved the killing of a slave who was asleep on or near the track and not at a crossing. Pearson, J., observed: "If both are in equal fault, if one can recover so can the other, and thus there would be mutual faults and mutual recoveries, which would contradict the saying `that law is the perfection of reason.'" The Herring case, however, was overruled in Deans v. R. R. 107 N.C. 686, 12 S.E. 77. The Deans case
expressly adopted and applied the principle of Davies v. Mann.
The legal basis of the principle has created a wide divergence of opinion among text-writers and courts of last resort. In Neal v. R. R.126 N.C. 634, 36 S.E. 117, it was held that last clear chance and proximate cause are synonymous terms, the Court saying: "The doctrine of proximate cause — the last clear chance — is firmly established in this State, and we have no idea of abandoning or in any way disturbing it." In the Neal case an issue as to last clear chance was submitted, but the trial judge nonsuited the case, even though the train at the time of the injury was running in violation of ordinances regulating speed and the ringing of the bell. The Court said: "The distinction does not seem to lie so much in the negligence of the parties where both are guilty of negligence, as it does in the condition of the parties, and we think upon examination that it will found that where the company has been held liable, it is in case where the party injured was not upon equal opportunities with the defendant to avoid the injury, and in cases where there was something suggesting to the defendant the injured *Page 768 
party's disadvantage or disability — as where the party injured is lying on the railroad track apparently drunk or asleep, or on a bridge or trestle when he could not escape or could not do so without great danger. In such cases, if the engineer saw the party injured or by proper diligence should have seen, the company is liable. It is in such cases as these that the doctrine of proximate cause or the last clear chance is called in to determine the liability." The trial judge in nonsuiting the case gave the following reason for his action: "That notwithstanding the negligence of plaintiff's intestate the defendant might, by ordinary care, have avoided the injury, the evidence, which as to the plaintiff must be believed, clearly showed that notwithstanding defendant's negligence, the plaintiff's intestate by the exercise of ordinary care, might himself, up to the last moment, have avoided the injury. Therefore the negligence of plaintiff's intestate, if not the proximate cause, at least concurred with defendant's negligence, up to the last moment, in together constituting the proximate cause of the injury. The third issue therefore should be answered no, and the plaintiff is not entitled to recover in the action." Again it has been held that: "If the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote." Clark v. R. R., 109 N.C. 430,14 S.E. 43; Pickett v. R. R., 117 N.C. 616, 23 S.E. 264; Styles v. R. R.,118 N.C. 1084, 24 S.E. 740. In Baker v. R. R., 118 N.C. 1015,24 S.E. 415, the last clear chance was referred to as "intervening negligence after the careless act of the plaintiff was complete and became a fact accomplished." This expression doubtless means that the negligence of the party injured must have spent itself before the principle of last clear chance would apply. However, in Norman v. R. R., 167 N.C. 533,83 S.E. 835, this Court held: "The liability of defendant, under the doctrine of last clear chance, did not depend upon the `cessation or culmination of plaintiff's negligence.' What is meant by the quoted expression, which is used in the instruction, we suppose to be that plaintiff's negligence must have spent if force, or have become dormant or inactive. But this was not necessary to constitute the defendant's negligence the proximate cause of the injury. The very fact that the plaintiff, in the presence of danger, continued to be negligent, and in apparent ignorance of the danger with reference to the car, but increased the duty of the defendant's motorman to be on his guard and to adjust his conduct to that situation by lessening the speed of car, bringing it under control and generally placing himself in a state or readiness to stop, should it be necessary to do so." *Page 769 
Any apparent contradiction between the Norman case and other cases upon the subject disappears in the light of the facts. Norman was backing his car across the tracks of the street railway and attempting to turn around "in apparent ignorance of the danger with reference to the car," and when the motorman could have seen that he was in a dangerous situation and unconscious of his peril.
The question as to whether the doctrine grows out of or is founded upon proximate cause or synonymous therewith has been the subject of extensive and intensive discussion. The decision of this particular case, however, does not require us to enter this field of learning, for the reason that there are certain well established principles of law applicable to last clear chance which are decisive of the merits of the controversy. These principles relating to the application of the doctrine may be stated as follows:
1. The doctrine of last clear chance does not arise until it appears that the injured party has been guilty of contributory negligence.
2. No issue with respect thereto must be submitted to the jury unless there is evidence to support it. Ellerbe v. R. R., 118 N.C. 1024,24 S.E. 808.
3. The burden upon such issue, when submitted, is upon the plaintiff.Cox v. R. R., 123 N.C. 604, 31 S.E. 848; Hudson v. R. R., 190 N.C. 116,129 S.E. 146; Buckner v. R. R., 194 N.C. 104, 138 S.E. 535.
4. The doctrine does not apply to trespassers and licensees upon the tracks of a railroad who, at the time, are in apparent possession of their strength and faculties, the engineer of the train producing the injury, having no information to the contrary. Under such circumstances the engineer is not required to stop his train or even slacken its speed, for the reason that he may assume until the very moment of impact that the pedestrian will use his faculties for his own protection and leave the track in time to avoid injury. Glenn v. R. R., 128 N.C. 184,38 S.E. 812; Beach v. R. R., 148 N.C. 153, 61 S.E. 664; Exum v. R. R.,154 N.C. 408, 70 S.E. 845; Abernethy v. R. R., 164 N.C. 97, 80 S.E. 421;Hill v. R. R., 169 N.C. 740, 86 S.E. 609; Davis v. R. R., 187 N.C. 147,120 S.E. 827.
However, if a person is lying on the track asleep or drunk, or the engineer knows that the person on the track is insane or otherwise insensible of danger, or unable to avoid injury by the exercise of ordinary care, it is his duty to resolve all doubts in favor of the preservation of life and limb, and immediately use every means, consonant with the safety of his passengers, to slacken the speed of the train or stop if necessary.Bullock v. R. R., 105 N.C. 180, 10 S.E. 988; Deans v. R. R., 107 N.C. 686,12 S.E. 77; Pickett v. R. R., 117 N.C. 616, *Page 770 23 S.E. 264; Sawyer v. R. R., 145 N.C. 24, 58 S.E. 598; Edge v. R. R.,153 N.C. 212, 69 S.E. 74; Henderson v. R. R., 159 N.C. 581,75 S.E. 1092; Hill v. R. R., 169 N.C. 740, 86 S.E. 609.
5. The doctrine does not apply when the contributory negligence of the injured party bars recovery as a matter of law. Otherwise contributory negligence would totally disappear. Cooper v. R. R., 140 N.C. 209,52 S.E. 932; Mitchell v. R. R., 153 N.C. 116, 68 S.E. 1059; Coleman v. R.R. 153 N.C. 322, 69 S.E. 129; Davidson v. R. R., 171 N.C. 634,88 S.E. 759; Holton v. R. R., 188 N.C. 277, 124 S.E. 307; McCullock v. R.R., 188 N.C. 797, 125 S.E. 529; Elder v. R. R., 194 N.C. 617,140 S.E. 298; Harrison v. R. R., 194 N.C. 656, 140 S.E. 598; Pope v. R. R.,ante, 67; B O. R. R. Co. v. Goodman, 48 S.Ct., 24.
Bearing these principles in mind, it becomes necessary to determine their bearing upon the rights of travelers at public crossings.
It has been uniformly held in this State that a railroad and a traveler have equal rights to a crossing. Thus in Johnson v. R. R., 163 N.C. 431,79 S.E. 690, the Court held: "Where a railroad track crosses a public highway both a traveler and the railroad have equal rights to cross; but the traveler must yield the right way to the railroad company in the ordinary course of the latter's business." Duffy v. R. R., 144 N.C. 26,56 S.E. 557.
It is also the duty of the railroad company to use due care in giving timely warning of the approach of its train to a public crossing either by sounding the whistle or ringing the bell at the usual and proper place to the end that those approaching or using the crossing may have notice that a train is at hand. A failure to perform this duty constitutes negligence.Bagwell v. R. R., 167 N.C. 611, 83 S.E. 814; Williams v. R. R.,187 N.C. 348, 121 S.E. 608; Earwood v. R. R., 192 N.C. 27, 133 S.E. 180.
Again in Rigler v. R. R., 94 N.C. 604, the Court said: "When a traveler is approaching a railway crossing, with an unobstructed view of the track in both directions, it is his duty to look both ways, and if he advances to the point of intersection, and attempts to cross in front of the approaching cars, and receives an injury, such conduct will constitute negligence, so as to preclude him from recovering."
In Bullock v. R. R., 105 N.C. 180, 10 S.E. 988, an ox team stalled on the tracks of the railroad. The engineer could see for a distance of 1,070 yards. The Court said: "It was negligence on the part of the defendant, if the engineer could have seen, by watchfulness, though he did not in fact see, that the road was obstructed in time to stop his train before reaching the crossing. . . . It is true that, ordinarily, an *Page 771 
engineer has a right to assume that one who has time will get out of the way, but he is not warranted in acting upon this assumption after he `has reason to believe that he is laboring under some disability, or that he does not hear or comprehend the signals.'"
In Coleman v. R. R., 153 N.C. 322, 69 S.E. 129, plaintiff was driving a horse and buggy at a public crossing and was struck by a rapidly moving train. Plaintiff testified that he looked and listened some distance from the right of way and saw no train and heard no signal. The Court held: "The law imposes equal duty upon the traveler when he reaches a crossing and before attempting to go on the track to both look and listen for approaching trains, for the traveler by doing so, if there is nothing in his way, can most certainly prevent a collision and save himself from harm. When he reaches the track, it is no great hardship imposed upon the traveler to require him to exercise ordinary prudence and to cast his eye up and down the track. By so doing he has the last and most certain chance to prevent collisions and save himself as well as the train, its crew and passengers from possible injury. . . .
When must a traveler look? A writer in the Personal Injury Law Journal of July, 1910, declare that all conflicts of opinion on this subject may be avoided by adopting the common-sense rule that the traveler should look when about to enter upon the track." Harrison v. R. R., 194 N.C. 656,140 S.E. 598.
Applying the established principles of law to the facts disclosed by the record, it appears that the plaintiff's intestate, in the day time, drove his car upon the tracks of the defendant at a time and place where his vision was unobstructed and when at that instant a long, heavy freight train was rapidly approaching and dangerously near. Indeed, before he had traversed the distance between the rails, to wit, 4 feet 8 1/2 inches, he was struck by the train. The conclusion is irresistible that the train was dangerously near the crossing when the plaintiff's intestate, being at the time under no disability or disadvantage, entered upon the track. We see no evidence in the record which tends to support the issue of last clear chance submitted by the trial judge, and therefore hold that it was error to submit such an issue. Eliminating this issue, the plaintiff is not entitled to recover by reason of the fact that the jury found that plaintiff's intestate was guilty of contributory negligence.
Modified and affirmed. *Page 772