SANFORD A. LONG v. DICKERSON SWINDELL, CORNELIUS SWINDELL, SOLOMON F. SWINDELL, RICHARD C. WINDLEY and GEORGE CREDEL.

*Easement--Condition    Precedent--Parties--Verdict--Damages--Su-*
*preme Court Practice.*

1. Where the grant of an easement is upon a condition precedent, it cannot be enjoyed by the grantee until the condition is performed.

2. In such case, a deed from the original grantee conveys only a right to the easement upon performance of the prescribed condition precedent.

3. The word "if" is an apt one to express a condition precedent to the creation of an easement.

4. Where an injury is caused by the separate action of several persons whose interests are adverse to the plaintiff it is proper (under C. C. P. §§ 61 and 248, sub. sec. 3,) to join them as defendants in an action for damages.

5. But where there is no unity of design or concert of action, and the *separate* action of each defendant causes the single injury, the share of each in causing it, is separable and may be accurately measured. In such case the jury can properly assess several damages.

6. This Court gives such judgment as the Court below should have given.

(*Maynard* v. *Moore,* 76 N. C. 158, cited and approved.)

CIVIL ACTION for Damages for Breach of Covenant, tried at Spring Term, 1877, of Hyde Superior Court, before *Eure, J.*

The case made by the pleadings and verdict of the jury was this :

On the 30th of April, 1855, the plaintiff owned a certain piece of land, through which a ditch ran from Mattamuskeet Lake, to a canal which ran through a piece of land then the property of one Stanley, called the McCauley land, to the head of Wysocking Creek.

The plaintiff had acquired a right to drain his land into this canal. Jones Boomer was seized in fee of a piece of land adjoining the plaintiff's on the west, and John W.

Litchfield, of another piece west of, and adjoining the Boomer land. On the said day the plaintiff made and delivered to Boomer and Litchfield a deed as follows;

"This indenture made and entered into this the 30th day of April, 1855, between Sanford A. Long of the one part, and Jones Boomer and John W. Litchfield of the other part, all of the County of Hyde and State of North Carolina, witnesseth; Whereas the said Long, Boomer and Litchfield, at the time of sealing and delivery of these presents, are respectively seized in fee of adjoining tracts of land; and whereas the said Boomer and Litchfield having no convenient and effective drain to their lands without crossing over and through the lands of the said Long, *and the said Long being willing in the spirit of good neighborhood to grant a privilege therefor on certain conditions, reservations and limitations;* and whereas the said Long has a personal privilege of a canal or drain, through the lands of Edward Stanly, to the head of Wysocking Creek, not granted to others'; *now if the said Boomer and Litchfield, shall procure from the owners of the said land, a right of drain or ditch from the southern terminus of my Lake canal,* then through to the head of Wysocking Creek, of sufficient width and compass to discharge and carry off all the water which may be forced down the drains hereinafter granted them through my own land, and shall in conjunction with myself, cut out and keep open said canal leading into Wysocking Creek—the said Boomer performing three-sevenths of the labor necessary thereto, the said Long three-sevenths, and the said Litchfield one-seventh—and shall at all times when necessary perform their share of said work, *and in default thereof, pay to the other parties performing it, the value of their share of the labor, which value is to be adjudged and assessed by three disinterested parties chosen for that purpose:*

"Then this indenture witnesseth, that the said Long, for divers good and sufficient considerations, and more especially

12

for the consideration of five dollars to me in hand paid by the said Boomer, and the further sum of five dollars to me in hand paid by the said Litchfield, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, the said *Sandford A. Long* hath bargained, granted, sold, released and confirmed, and by these presents, doth bargain, grant, sell, release and confirm unto the said *Jones Boomer*, his heirs and assigns. the right to cut and keep open, a drain way or ditch of six feet in width, through that tract of land now owned by me, under the purchase from Francis A. McCauley, known as the McCauley land, said drain or ditch to commence where said Boomer's land (whereon he now lives) intersects and corners at its southern point with my line, and where he has now a ditch, and running with the old ditch to where it intersects with my leading canal from the Lake, thence with the tract of said leading canal so as to leave a space of twenty-one feet in width on the east side thereof between said ditch and the line of George A. Selby to my south and back line.

"*And the said Sanford A. Long* hath bargained, granted, sold, released and confirmed, and doth hereby grant, bargain, sell, release and confirm to the said *John W. Litchfield*, his heirs and assigns, the right to cut and keep open a ditch or draining way of six feet in width, from the point where the land (whereon he now lives) intersects with the back line of my McCauley land, and running thence with said back line to where it will empty into the ditch or privilege granted to Jones Boomer, saving and reserving to myself, my heirs and assigns, the right and privilege of draining any and every portion of my said lands into either one, or both, of said ditches, whether that under the grant to Jones Boomer, or to John W. Litchfield. To have and to hold the privilege of drain herein granted to the said Boomer and Litchfield, their heirs and assigns, *as an appendage each to the tracts of land on which they now live and no other.*

"And the said Boomer for himself, his heirs and assigns doth covenant to and with said Long, his heirs and assigns, that he will keep open the said ditch at his own proper costs and charges, and that he will at all times perform such work thereon as may be necessary to keep said ditch in proper repair.

"And the said Litchfield for himself, his heirs and assigns doth covenant to and with said Long, his heirs and assigns, that he will in cutting said ditch throw up a bank on the nothwest side thereof of sufficient height and width to operate as a permanent barrier or dam against the back water, and that he will at all times keep such dam in permanent and sufficient repair at his own proper costs and charges.

"And the said Long doth hereby covenant to and with the said Boomer and Litchfield, their heirs and assigns, that they shall, and lawfully may, at any and all times, peaceably and quietly use, occupy and enjoy the rights of drain hereby granted, and that they shall for that purpose, have a right to pass over my said lands free and unmolested by me, my heirs and assigns.

In testimony whereof I have hereunto set my hand and seal, day and date above written.

S. A. LONG. [Seal.]

"Signed, sealed and delivered in presence of Robert Jennett and N. Beckwith."

This deed was not executed by either Boomer or Litchfield.

Afterwards, viz ; in 1859, Litchfield conveyed his piece of land to Marcus Swindell, who devised it to Dixon Swindell, one of the original defendants, and died in 1864. In May, 1855, Boomer conveyed his piece of land to Marcus Swindell, who devised the same to Cornelius Swindell and Solomon Swindell, two other of the defendants, and to David Swindell.

Solomon conveyed two-thirds of his estate to R. C. Windley, a defendant.

The estate of David Swindell was sold under execution, and purchased by the defendant George Credle, and was afterwards conveyed to Cornelius Swindell, a defendant.

Neither Boomer, nor Litchfield, nor any of their assignees ever procured a right to drain their respective lands into the Stanly (or McCauley) canal. Nor have any of them ever enlarged the said Stanly canal.

Nevertheless, the said Marcus Swindell while he owned the Boomer land, cut a ditch on the route on which a right to cut a ditch *six* feet wide had been granted to said Boomer, by the deed of April 30th, 1855, which ditch either was originally cut by him, or soon after his death was enlarged by some of his assignees, to the width of *ten* feet. and was continued of that width to the commencement of the action.

Litchfield, or Marcus Swindell his assignee, while owning the Litchfield land, cut a ditch from the western boundary of that land through the same, to meet the ditch aforesaid through the Boomer land; and thus the water from both the Boomer and Litchfield lands was poured into the ditch of the plaintiff; and the outlet being insufficient to discharge the waters so brought down, the plaintiff's land was overflowed and injured.

The defendants, assignees as aforesaid, continued up to the time of the bringing of the action, to use and enjoy the ditches cut as aforesaid through the Boomer and Litchfield lands.

The plaintiff claimed damages for the injury, and also moved for an injunction to restrain the defendants from flowing water from their lands into plaintiff's ditch.

Several issues were submitted to a jury, and the substance of their findings is incorporated in the preceding statement.

They found separate damages against the defendants R. C. Windley, and Cornelius Swindell, and the heirs of Dixon

Swindell, who had died during the pendency of the action. His heirs, to-wit, Sally J. Swindell, Joel Swindell and D. Swindell had been duly made parties and appeared by a guardian *ad litem* appointed by the Court. The administrator of Dixon Swindell was also made a party.

His Honor dismissed the action and the plaintiff appealed.

*Messrs J. E. Shepherd* and *D. M. Carter,* for plaintiff.
*Mr. Geo. H. Brown, Jr.,* for defendants.

Rodman, J. (After stating the facts as above.) Three points are made by the defendants:

1. That inasmuch as Boomer and Litchfield never executed or formally became parties to the deed of April 30th, 1855, they were not bound by the conditions and covenants on their part therein contained. It is not denied in the answer, and it is expressly found by the jury, that they accepted the deed, and that their assignees accepted and used the easement granted in it.

We had occasion to consider this question in *Maynard* v. *Moore,* 76 N. C. 158, and it is there said, that a party who accepts a deed containing covenants on his part, is bound to perform them, although he does not execute the deed as a party. For that, the case of *Finley* v. *Wilson,* 4 Zab. (N. J.) 311, is cited. The true reference is 2 Zab. 311. See also on this point *Earle* v. *Mayor of New Brunswick,* 38 N. J. 47 ; 13 Pick. 323 ; 9 Metc. 396.

In the present case however there is no necessity for resorting to that doctrine.

In the deed under which the defendants claim, the grant of the easement is expressly made conditional upon the acquisition by the grantees, of a right to drain through the Stanly canal, and provision is made for their enlarging that canal in conjunction with the plaintiff. The deed, after reciting that Boomer and Litchfield owned adjoining lands

which they could not conveniently drain except through the land of the plaintiff, and that plaintiff had a right to drain his own land only, through the Stanly canal, and that said plaintiff was willing "to grant a privilege therefor on certain conditions, &c.," says; "Now *if* said Boomer and Litchfield shall procure from the owner of said (Stanly) land, a right to drain or ditch, &c., of sufficient width and compass to dis-, charge and carry off all the water which may be forced, down the drains hereinafter granted them through my land, and shall in conjunction with myself, cut out and keep open said canal leading to Wysocking, (the Stanly canal) &c." "Then this indenture witnesseth," that said Long grants to Boomer and his heirs and assigns, an easement to cut into Long's ditch; and also grants to Litchfield and his heirs and assigns, a similar easement; the said easements to be held as appendages to the several pieces of land then owned by Boomer and Litchfield respectively.

Then the said Boomer and Litchfield severally covenant for themselves and their respective heirs and assigns, to keep open and in good order "the said ditch," (meaning, as we assume, the ditch or ditches authorized to be cut through the land of the plaintiff. The precise meaning of the words is not material in the present action.)

The word "if" is an apt one to express a condition precedent to the creation of an easement; and the whole language and frame of the deed show that it was the intention of the grantor, that the grant should not go into effect, at least, until the grantees had acquired an easement in the Stanly canal. In fact as the grantor had no right to flow, into the Stanly canal, water from any land other than his own, he could not make the grant to Boomer and Litchfield, except on that condition precedent, without subjecting himself to an action for damages by the owner of that canal.

2. The second point made by the defendants is, that if the original grantees, Boomer and Litchfield, were bound by the covenants on their part, contained in the deed of April, 1855, their assignees, the present defendants, are not.

The view which we take of the intent and effect of that deed renders it unnecessary for us to consider this question. For if the grant of the easement was upon a condition precedent which has never been performed, then the original grantees were never seized of it, and of course it never passed to their assignees. Nothing passed to the assignees beyond what their assignors had, which was a right to the easement upon the performance of the prescribed condition precedent.

3. The third point is, that if the defendants have no right to flow water from their respective lands into the ditch of the plaintiff, to his injury, still the tort is that of the several defendants respectively, for which several actions would lie, and not a single tort committed by all of them jointly, for which a joint action would lie; and if a joint action will lie, the present verdict is bad in assessing several damages. We regret that we were not furnished with any argument on this point by the counsel on either side, or with a reference to any authorities respecting the practice proper in such cases. Before our Code of Civil Procedure, the rule seems to have been, that in an action against joint trespassers the jury were required to find a joint damage, and if they found several damages against the several defendants, the plaintiff was entitled to judgment against all of the defendants for the highest sum found against any one of them, or the verdict would be quashed. *Heydon's case*, 11 Coke Rep. 5, a. § § 4. 5, (p. 8, vol. 6,) and *Miles v. Prat*, there cited. In *Eliot v. Allen*, 1 Mon., Gran. Scott 18, (50 E. C. L. R.) it was said, that where the acts of the several defendants made but one trespass, the damages must be joint. No doubt this rule is reasonable when all the trespassers act

upon a common design, and in aid of each other, although the parts taken by each differ in importance; and it applies also in criminal cases. But it was early seen that there might be cases in which its application would be unjust. In *Austen v. Willward,* Cro. Eliz., 860, it was said, "if in trespass against divers, the one be found guilty in part, and the others in all, then the damages shall be several." And this view was acted on in *Rodney v. Strode,* 3 Mod. 101; and in *Player v. Warn,* Cro Car. 54. For a collection of the English cases, see Mayne on Damages, pp. 329, 330.

It is unnecessary more particularly to examine the former law, or to decide what the rule would have been before our Code of Procedure. Section 61 of the Code says : "Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, &c ;" and section 248, sub-section 3, says : "In an action against several defendants the Court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment may be proper." We will now consider the facts of the present case with a view to the application of the above sections.

All the defendants have an interest in the controversy adverse to the plaintiff. They all claim the easement in controversy, under the same grant; and the injury to the plaintiff is caused by the separate action of each of them. They are, therefore, all properly made defendants under section 61. But there is no unity of design, and no concert of action among them. The most western of the defendants pours his water on his eastern neighbor, and he, in turn, upon the one east of him; and thus, through a common channel, the water of all of them passes into the ditch of the plaintiff and causes the injury. While the separate action of each defendant causes the single injury, the share of each in causing it, is separable, and may be accurately measured. It is, *cæteris*

*paribus*, as they seem to have been here, proportionate to the area which he drains upon the plaintiff. Under these cir-- cumstances it· would be unjust and unreasonable to assess joint damages, by which the possessor of ten acres drained would pay as much as the possessor of fifty acres ; and might perhaps be compelled to pay the whole without a right to recover contribution. *Merriweather v. Nixon*, 8 Term Rep.. 186.

We think that under the peculiar circumstances of this case, the jury were justified in assessing several damages. The Judge erred in dismissing the action.

4. We are bound to give here such judgment as the Judge below should have given. It has been seen that Dixon Swindell, one of the defendants, died during the pendency of the action, and that both his administrator and his heirs were made parties defendant, and the jury find damages against the heirs. Clearly there was no cause of action against them. The personal estate is liable for damages done by the intestate.

Judgment below reversed. and the plaintiff will have judgment here against E. L. Mann, administrator of Dixon Swindell, for $71.42 ; against Cornelius Swindell for $142.-84 ; against R. C. Windley for $35.71. He will also have judgment against these defendants jointly, for costs.

T. F. Swindell and George Credle will go without day, and each will have judgment against the plaintiff for his. costs.

The motion for an injunction is refused. The plaintiff has an adequate remedy without it.


PER CURIAM. Judgment accordingly.