Motions to nonsuit were overruled and following issues submitted:
1. Was the plaintiff injured by the negligence of the defendant as alleged in the complaint?
2. Did the plaintiff by his own negligence contribute to his own injury?
3. What damage is the plaintiff entitled to recover?
The jury answered the first issue "Yes," the second issue "No," and the third issue, "Four thousand dollars."
From the judgment rendered, defendant appealed.
The plaintiff was injured while in the act of crossing defendant's track driving a horse and buggy at a public crossing at Fair Bluff, by coming in collision with a rapidly moving engine and train. *Page 264 
Upon his examination in chief, plaintiff, after testifying that (324) after he had turned out from the road to the right to cross track, said, "I don't know how far I went, but I stopped, looked and listened to see if any train was coming."
Plaintiff further stated: "After I stopped, looked and listened and heard nothing, I started off in a slow walk and did not know there was a train coming until I got on the track, and when I saw it, it was in ten feet of me."
Upon cross-examination plaintiff goes more into detail and states definitely when and where he looked and listened. He says that after he got into the road that led to the crossing he stopped, looked and listened to see if any train was coming and heard nothing; that the view from where he stopped was obstructed by three or four houses, but that when he got to the right of way he could see some distance up or down the track.
Plaintiff further stated that there was nothing on the right of way to obstruct his view; that the edge of the right of way was 65 feet from the center of the track; that after he got on the right of way he could see up the track in the direction the train was coming one-quarter of a mile; he did not look for the train after he got on the right of way, for he had looked before and thought if the train was coming he could hear it; did not think he was on the right of way when he stopped, looked and listened. If he had looked after he got on the right of way he might have seen it; was riding in a buggy with the curtains buttoned down both sides and back.
N. A. McQueen testified that he heard the train blow some distance up the road, probably a mile; heard the danger signal given and heard the roar of the train.
E. R. Connor testified that the edge of the right of way was 60 or 65 feet from the track; that after Coleman got to the right of way there was nothing to prevent his seeing the train, as the view was unobstructed, and he could see the train three-quarters of a mile off; he heard the train signal; heard the train roaring and saw it coming.
Defendant introduced no evidence.
In view of the great number of uniform decisions by this Court bearing upon this question, it would seem to be plain that his Honor erred in denying defendant's motion.
(325) "Travelers upon a common highway which crosses a railroad, and the company running its trains, have mutual and reciprocal duties and obligations." Thompson on Negligence, 1604, 1605.
From its very nature, and for public convenience, the train has the right of way, but the law imposes upon the engineer the duty to give signals and to exercise vigilance in approaching crossings in order to avoid injury. *Page 265 
The law imposes the equal duty upon the traveler when he reaches a crossing and before attempting to go on the track to both look and listen for approaching trains, for the traveler by doing so, if there is nothing in his way, can most certainly prevent a collision and save himself from harm. When he reaches the track, it is no great hardship imposed upon the traveler to require him to exercise ordinary prudence and to cast his eye up and down the track. By so doing he has the last and most certain chance to prevent collisions and to save himself as well as the train, its crew and passengers from possible injury.
In respect to cases of collision at crossings Judge Thompson says: "The leading rule is that there can be no recovery of damage where the negligence of the traveler contributed proximately to the injury, although the railway company was also guilty of negligence." Negligence, sec. 1605.
A railroad crossing is itself a notice of danger, and all persons approaching it are bound to exercise care and prudence, and when the conditions are such that a diligent use of the senses would have avoided the injury, a failure to use them constitutes contributory negligence and will be so declared by the court.
Mr. Beach says: "In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track; and a failure to do so is contributory negligence which will bar recovery. A multitude of decisions of all the courts enforce this reasonable rule."
There are of course exceptions to this, as well as most other rules, but where the traveler "can see and won't see" he must bear the consequences of his own folly. His negligence under such conditions bars recovery because it is the proximate cause of his injury. He has the last opportunity to avoid injury and fails to take (326) advantage of it.
This is the law as laid down by practically all the appellate courts in this country as well as by the Supreme Court of the United States.
R. R. v. Freeman, 174 U.S. 379, is a case "on all fours" with this. The two can not be distinguished. In that case it is said in the syllabus, "The oral testimony on the subject tended to show that Freeman neither stopped, looked nor listened before attempting to cross the track. Held, the testimony tending to show contributory negligence upon the part of Freeman was conclusive, and that nothing remained for the jury, and that the company was entitled to an instruction to return a verdict in its favor."
In the opinion Mr. Justice Brown says: "She was (under the circumstances) bound to listen and look before attempting to cross the railroad track in order to avoid an approaching train and not to walk *Page 266 
carelessly into a place of possible danger. Had she used her senses, she could not have failed both to hear and see the train which was coming. If she omitted to use them and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain about them. If using them she saw the train coming and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity can not be cast upon the defendant."
Further on in the opinion the learned justice comments on such conditions as tend sometimes to excuse the traveler, such as an obstructed view and the like, none of which exist in the case at bar.
The "elementary doctrine" is declared by the Supreme Court of the United States in R. R. v. Houston, 95 U.S. 697; Schofield v. R. R.,114 U.S. 615; Stead v. Imp. Co., U.S., 161, and other cases.
But why go outside our own Reports? The doctrine that such negligence bars recovery has been consistently recognized by this Court in at least thirty-five cases, beginning with Parker v. R. R., 86 N.C. (327) 221, and ending with Mitchell v. R. R., ante, 116.
A leading case, and one in which the subject is thoroughly considered, is Cooper v. R. R., 140 N.C. 212, wherein Mr. Justice Hoke
quotes at length the rule as stated by Beach and says: "This rule is so just in itself and so generally enforced as controlling that citation of authority is hardly required."
In Trull v. R. R., 151 N.C. 550, it is again said by the same learned justice that "where the view is unobstructed, a traveler who attempts to cross a railroad track under ordinary and usual conditions without first looking, when by so doing he could note the approach of a train in time tosave himself by reasonable effort, is guilty of contributory negligence," and the judgment was that the plaintiff could not recover, although the defendant was negligent.
When must the traveler look? A writer in the Personal Injury Law Journal of July, 1910, declares that all conflicts of opinion on this subject may be avoided by adopting the common-sense rule that the traveler should look when about to enter upon the track.
"A look when about to enter the zone of danger from an approaching car is not only the most availing, but it is then that the most accurate and reliable judgment can be formed as to the safety of an attempt to cross." Personal Injury Journal, page 11; see also Wecker v. R. R.,120 N.Y.S., 1020.
It is now well established law in New York State that an omission to look is only excusable in the situation where the precaution was shown by the circumstances to have been an unavailing one. In other *Page 267 
words, that the duty of looking when one approaches a street railway crossing is not adequately discharged by merely looking as the dangerous point is approached, and then when it is reached going blindly forward.Baxter v. R. R., 190 N.Y. 439; Fowler v. R. R., 74 Hun, 144; Coleman v.R. R., 98 Am. Dec., 349; affirmed 188 N.Y. 564. See also Cranch v. R. R.,186 N.Y. 310.
This is the standard of prudence fixed by Trull v. R. R., supra, (328) where it is held the traveler must look "in time to save himself," and by Mitchell v. R. R., ante, 116, Inman's case, 149 N.C. 125, as well as by numerous other decisions of this Court.
In Mitchell's case plaintiff had eleven feet unobstructed view up and down the track before reaching it. He failed to look, and it was held that his negligence was the proximate cause of his injury and that he could not recover.
In the case under consideration plaintiff's own witnesses, except himself, testify that the engineer gave the signals and they heard the whistle, and that they could see the approaching train.
Plaintiff states that the whistle did not blow and that no signal was given, but admits that when he looked for the train he was not even on right of way which extended 65 feet each way from center of the single track railroad.
When he did look his view was obstructed by houses. Plaintiff testified that from the edge of the right of way up to the track the view up and down it is clear, and that he did not look up and down the track after he passed the edge of the right of way, 65 feet from the track, when he would have had an unobstructed view. In other words, plaintiff looked when he could not see, but at the time and place when he could plainly see an approaching train in ample time to avoid a collision he did not look. He was so careless and indifferent that he did not see the train or hear it until he was on the track and the engine was within ten feet of him. The authorities are uniform that such inexcusable negligence is the proximate cause of the injury and bars recovery.
The motion to nonsuit should have been sustained.
Reversed.
Cited: Exum v. R. R., 154 N.C. 410; Wolfe v. R. R., ibid., 573; Fannv. R. R., 155 N.C. 144; Johnson v. R. R., 163 N.C. 443; Ward v. R. R.,167 N.C. 157; Penninger v. R. R., 170 N.C. 476; Davidson v. R. R.,171 N.C. 636. *Page 268 
(329)