J. W. KIMBROUGH v. WALKER D. HINES, DIRECTOR GENERAL, AND THE ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 26 October, 1921.)

1. **Railroads—Government Control—Personal Injuries—Negligence—Federal Decisions—Federal Law—Dismissal of Action.**

Under the recent opinion of the U. S. Supreme Court, in *R. R. v. Ault,* a recovery may not be had against a railroad company while under government operation for damages for a personal injury negligently inflicted

upon an employee; and where the company and the Director General of Railroads have both been made parties defendant, the action will be dismissed, on appeal, as to the former.

**2. Same—Appeal and Error—Judgments.**

Where a railroad company and the Director General of Railroads have both been joined as parties defendant in an action to recover for a negligent injury, and issues have been submitted as to each, and adverse verdict rendered as to each, there can be no prejudice to the Director General in dismissing the action as to the railroad company and affirming it as to the Director General, and the same may be done under the provisions of C. S., 658 and 1412.

**3. Appeal and Error—Dismissal as to One Party—Joint Judgment—Distinction Between Courts of Equity and Law Abolished.**

Under the provisions of our statutes abolishing the distinction between courts of law and courts of equity, a joint judgment may be affirmed on appeal as to one defendant and dismissed as to another, when this may be done without prejudice.

**4. Appeal and Error—Second Appeal—Same Facts.**

On this appeal the facts are substantially the same as in the former appeal in this case, and as the trial court has followed the directions of this Court as to the law, no error is found.

WALKER, J., dissenting in part.

APPEAL by defendants from *Connor, J.,* at March Term, 1921, of WAKE.

This was an action for personal injuries sustained at a grade crossing in Selma, N. C., on 27 January, 1919, by the alleged negligence of the defendants. From verdict and judgment the defendants appealed.

*Douglass & Douglass, R. W. Winston, and J. M. Broughton for plaintiff.*

*Murray Allen for defendants.*

CLARK, C. J. This case was before us at Fall Term, 1920, *Kimbrough v. Hines,* 180 N. C., 274, and a new trial was granted in an opinion by *Walker, J.* It appears from the transcript in this case that the trial judge has substantially observed the directions in every respect laid down in that opinion, and therefore we do not deem that it is necessary to repeat the law applicable to the facts, which are identical with those presented on the former appeal.

This action was brought against Walker D. Hines, Director General, and the Atlantic Coast Line Railroad Company. The judgment is against each of the defendants. Since this case was tried the U. S. Supreme Court, in the opinion in *R. R. v. Ault,* filed 1 July, 1921, have held that where such actions as this have been brought against the Director General, joining as a party the railroad company, which was being operated under General Orders No. 50, that the action cannot be

sustained as against the railroad company. The plaintiff in this case now submits that a modification of the judgment should be ordered reversing the judgment, and dismissing the action as to the Atlantic Coast Line Railroad Company.

The issues in this case affecting the liability of the Director General and the railroad company were separate and distinct, and had the trial judge stricken out all allegations in the complaint and the issues, relating to the railroad company, there would have remained a perfectly alleged cause of action against the Director General. The nature of the evidence would in no respect have been changed, and the verdict of the jury would have been the same. The Director General has no ground to insist that the judgment against the railroad company should not be reversed and the action dismissed as to said company.

C. S., 658, reads thus: "Upon an appeal from the judgment or order, the appellate court may reverse, affirm, or modify the judgment or order appealed from in the respect mentioned in the notice of appeal and as to any or all other parties, and may, if necessary or proper, order a new trial."

C. S., 1412, provides in part as follows: "In every case the Court can render such sentence, judgment, and decree as on inspection of the whole record it shall appear to them ought in law to be rendered thereon." Under the technical rules of the common law a different rule prevailed, but the court of equity always followed this procedure, which was adopted by this State when the distinction between law and equity was abolished. One court having taken place of both law and equity, a joint judgment may be affirmed as to one defendant, and dismissed as to another. This has been the uniform course and practice since the blending of the two forms of procedure, and is expressly authorized by our statutes, above quoted. *Newberry v. R. R.,* 160 N. C., 156; *Hollingsworth v. Skelding,* 142 N. C., 246; *Long v. Swindell,* 77 N. C., 185. The same practice has been followed in the courts of the other states which have adopted the modern system of practice.

Every objection which could be presented by the Director General is presented before us by this record as fully as it would be if the judgment as to the Atlantic Coast Line Railroad Company were not dismissed in pursuance of the decisions of the U. S. Supreme Court in *R. R. v. Ault, supra,* and the appeal as to the Director General has been in nowise prejudiced by the reversal of the judgment and the dismissal of the action as against the railroad company. Indeed, in *Ault's case* the Court recognized this course, for while reversing the judgment as to the railroad company as an unnecessary and improper party, it proceeded to review and discuss the appeal as to the Director General on the merits and reversed that appeal on an entirely different ground.

The judgment against the Atlantic Coast Line Railroad Company is reversed and set aside and the action as regards that company is dismissed. In the appeal by the Director General we find

No error.

WALKER, J., dissenting: I concur with the other judges that the defendant railroad company is not liable under the recent decision of the United States Supreme Court in *Mo. Pac. R. R. Co. v. Ault,* appearing in the Advance Opinions of that Court, at p. 647, No. 16, 1 July, 1921, and that, therefore, said defendant has properly been dismissed from the case with its costs.

I also agree with my brethren that judgments under our code of procedure may be joint or several, and, therefore, may be rendered against one or more of the defendants, and may also adjust matters in controversy as between plaintiffs and defendants, or between plaintiffs, or between defendants, so elastic is our present system, be it said to its great credit, in extolling its virtues and its simple and practical methods of dealing with all matters of litigation, and its provisions should be most liberally construed in order to effectuate justice as speedily as possible instead of delaying, or even defeating it, by dilatory pleading and practice, which was the fault of the old common-law system intended to be remedied. For example, the pleadings are sufficient if they state, in a plain and concise manner, without any unnecessary repetition (Pell's Revisal, sec. 467), the essential facts of the case, *Blackmore v. Winders,* 144 N. C., 215; *Brewer v. Wynne,* 154 N. C., 467; *Stokes v. Taylor,* 104 N. C., 395; *Warren v. Boyd,* 120 N. C., 58; and, likewise, in the interest and furtherance of this more liberal and sensible procedure, it is provided that:

"(1) Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and it may determine the ultimate rights of the parties on each side, as between themselves.

"(2) It may grant to the defendant any affirmative relief to which he may be entitled.

"(3) In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment may be proper."

It was right to proceed further against the Director General. These latter exceptions of the defendant as to the judgment were properly denied, which brings us to the merits of the case.

Plaintiff brought this action to recover damages for personal injuries sustained at Selma, N. C., 27 January, 1919, as the result of a collision

at a public crossing between the automobile which he was driving and a train on the line of the Atlantic Coast Line Railroad Company, which was being operated by the United States Railway Administration. There was testimony on behalf of plaintiff tending to show that the train was running at a speed of thirty or forty miles an hour; that no signal of approach to the crossing was given by whistle or bell; that the view of the track was cut off by a string of cars on a spur track, and that these cars extended two or three feet into the public road. Plaintiff testified that he looked and could not see down the track in the direction from which the train was coming, because his view was obstructed by the cars on the spur track.

There was testimony on behalf of the defendant tending to show that the cars on the spur track did not obstruct the plaintiff's view of the train, as the end of the car next to the crossing was some distance therefrom; that notice of the approach of the train had been given by blowing the whistle and ringing the bell, and that the speed of the train did not exceed ten or twelve miles an hour. The defendants pleaded the plaintiff's contributory negligence as a defense, and contended at the trial that the failure of the plaintiff to stop before entering upon the track, when it was his duty to do so, was, as matter of law, the proximate cause of his injury, as the facts with regard thereto were not questioned.

The case was before the Court at the Fall Term, 1920, and a new trial was ordered. In the opinion of the Court (180 N. C., 274) it is stated that the decision of the motion for a judgment of nonsuit would be reserved. This motion should be allowed upon the facts as they now appear.

"The failure of a person about to cross a railway track, on a highway at grade, to look and listen for an approaching train, or stop for such purpose, where the view of the track is obstructed, or where there is noise which he may control, is negligence *per se,* which will bar a recovery for an injury resulting from a collision with a train at such crossing." *Blackburn v. Railroad,* 34 Oregon, 215, citing numerous cases in support of this position at p. 222; *R. R. v. Bower,* 266 Fed., 965. In *Chase v. Maine Central R. R. Co.,* 167 Mass., 383, it is said to be a general rule "that, if there is anything to obstruct the view of a traveler on a highway at a crossing at grade, it is his duty to stop until he can ascertain whether he can cross in safety." See, also, *Shatto v. R. R.,* 121 Fed., 678; *R. R. v. Holden,* 93 Mo., 417; *Ely v. R. R.,* 158 Pa., 233. Contributory negligence under our statute is a matter of defense, and the burden of proof is placed upon the defendant to establish it unless it is proven by testimony offered in behalf of the plaintiff." *Cook v. Furnace Co.,* 161 N. C., p. 41. Where the facts are admitted, or not disputed, contributory negligence is a question of law for the court.

*Ovens v. Charlotte,* 159 N. C., 332; *Neal v. R. R.,* 126 N. C., 634. Where the facts necessary to constitute contributory negligence are established by the evidence of plaintiff, motion for judgment of nonsuit should be sustained. *Keller v. Fiber Co.,* 157 N. C., 575. Defendant may avail himself of the plea of contributory negligence on a motion to nonsuit upon evidence introduced by plaintiff. *Wright v. R. R.,* 155 N. C., 325; *Fulghum v. R. R.,* 158 N. C., 555; *Exum v. R. R.,* 154 N. C., 408; *Coleman v. R. R.,* 153 N. C., 322; *Mitchell v. R. R.,* 153 N. C., 116; *Neal v. R. R.,* 126 N. C., 634.

Plaintiff was thoroughly familiar with the crossing, having passed over it on the morning of the accident on his way from Raleigh to Pine Level. He knew the lay of the ground at the crossing, and that he was approaching the crossing, and says he slowed down. In describing the condition at the crossing, and the circumstances of the accident, plaintiff testified that as he approached the crossing he saw a long string of box cars on the connection track which extended two or three feet into the highway; that these cars entirely obstructed his view to the south, the direction from which the train was coming; that when he was within twenty feet of the crossing he "slowed down" his Ford automobile and brought it down practically to a stop, but did not stop. He described the situation with which he was confronted as looking like a "death trap." Plaintiff further testified, "I said I came very near to a stop. I was practically right at the railroad track. I was ten feet back from the railroad when I slowed up, and when I went through I put my foot on low gear. That Ford car would run under low gear not over four or five miles with all the gas I could give it. As well as I remember, I gave it all the gas I could."

On cross-examination plaintiff testified that he did not stop before going on the track; that if he had stopped behind the box cars the train would have passed on by, and he would not have been injured. He says: "When I slowed down, I put my hands on the emergency brake. I was practically at a stop when I reached the edge of those box cars; I was in low gear and speeded up to go on through. I said in my direct examination that I gave all the gas I could when I started to go through there, and that I was ten feet from the crossing when I slowed down and put my hands on the emergency. That nearly stopped my car; by pulling a little harder I could have stopped it. If I had heard the train I could have stopped almost immediately. I did not have a starter on the Ford. If I had stopped there behind that car I could also have stopped my engine; yes, stopped any noise the engine was making. I did not stop. When a Ford is in low gear it makes more noise than at any other time. Yes, I started off from a point ten feet. I started in low gear, and I went nearly to the crossing with the engine making more

noise than when I came nearly to a stop; they make more noise when you put them in low gear. Of course, when I went in low I speeded up my engine; the more you speed the engine the more noise you make." On redirect examination plaintiff testified that he thought there might be a shifting engine there, and that is why he slowed down.

Richard Britt, witness for plaintiff, testified that just before plaintiff reached the crossing he put his automobile in low gear and speeded it up.

The motions of defendants for a nonsuit, on the ground that plaintiff was guilty of contributory negligence, should have been allowed.

Defendants excepted to the following instructions: "It was the duty of the defendants to keep their premises at and near crossings free from obstructions which would prevent the plaintiff from seeing a train on the railroad approaching the crossing from a point on the highway at which he could stop his car in time to avoid a collision."

The court later instructed the jury that a failure to perform this duty would be negligence on the part of the defendants. It is not the unqualified duty of defendants to keep the premises free from obstructions. The duty could not be greater than to exercise the care of a prudent person in this respect.

The jury were also instructed as follows: "It being admitted that Selma is a thickly settled town, that near the public crossing there is an intersection of the Atlantic Coast Line Railroad with the Southern Railroad tracks passing over the crossing, and that the public highway is much frequented by travelers, it was the duty of the defendants not to run its train in approaching the crossing at a rapid and reckless speed without giving reasonable and timely notice of its approach. A failure on the part of the defendant to perform these duties, or any one of them, would be negligence on their part. . . . Now, gentlemen, there is no evidence here that there is any ordinance in the town of Selma prescribing the rate of speed at which they should pass, but I instruct you inasmuch as Selma is an important town and thickly settled, and that there are many tracks there, and there was an intersection of the Southern and Atlantic Coast Line, I instruct you that the defendant owed a duty to the public not to cause its locomotive to go through that town at a rapid and excessive rate of speed, and if, under all the facts and circumstances, you find that the speed was dangerous and reckless and not safe, then there would be negligence in that regard."

This instruction entirely disregards the fact that the burden of proof was on plaintiff to satisfy the jury by a preponderance of evidence that the train was being operated at a reckless speed. A finding "under all the facts and circumstances" is clearly insufficient.

The jury were further instructed: "If, however, you find from this evidence that there has been negligence on the part of the defendant,

then it would become your duty to further consider the evidence and ascertain whether or not such negligence as you may find was the direct and proximate cause of the injury which you may find that the plaintiff sustained, because, notwithstanding the fact that the defendant may have been negligent, unless that negligence caused the injury to the plaintiff, the defendant would not, in law, be liable to the plaintiff. For instance, suppose the railroad company had been negligent in obstructing his view of a train approaching from the south, but that he had been injured by a train coming from the north, as to which there was no negligence, then, of course, his injury, not having been caused by the negligence of the railroad, the railroad company would not be liable to him." This instruction must have been exceedingly confusing to the jury in considering the relation of cause to negligence on the part of defendant, and the causal connection between the two.

The court then instructed the jury as follows: "It was the duty of the defendants operating the locomotive and cars on the railroad to give reasonable and timely notice of the approach of the trains to the public crossing by ringing the bell or blowing the whistle, or by doing both, if under the circumstances and conditions existing at the time such was reasonably necessary to give such notice." This instruction was not supported by the evidence. There is nothing in the record to show the existence of circumstances requiring both the ringing of the bell and blowing of the whistle.

The court later instructed the jury that failure in performance of this duty would be negligence on the part of defendants. Considered together, these instructions are erroneous. An instruction not warranted by the evidence is erroneous, although correct as an abstract proposition of law. *King v. Wells,* 94 N. C., 344.

The following instruction was then given: "I instruct you, gentlemen of the jury, that if you find from the evidence that the signals were not given, that is, the bell not rung, *and* the whistle not blown, then there was negligence on the part of the defendant in that respect, and if you so find, it would then be necessary for you to further consider this issue."

It has been thoroughly settled by us that it is not the absolute duty of a railroad engineer to blow the whistle and ring the bell, as that depends upon the exigencies of the occasion. Sometimes it will be sufficient to blow the whistle *or* ring the bell—and again, it may be the part of prudence, at times, to do both. *Edwards v. R. R.,* 132 N. C., 99. The particular charge here was that if they found that the *signals* (in the plural) were not given, that is, that the bell was not rung *and* the whistle not blown, which clearly implied, as the duty was expressed conjunctively, that both such signals must be given, and the jury must have so understood it.

16—182

The jury were further instructed: "It becomes necessary for you to further consider the evidence and determine whether any such negligence as you find the defendant to be guilty was the proximate cause of the injury." It seemingly was error for the court to say to the jury that the facts recited in these instructions constituted negligence on the part of the defendants. The issue reads, "Was plaintiff injured by the negligence of defendant?" etc., and it would naturally impress the jury that they were being instructed by the court to answer the issue "Yes" if they found the facts as recited in the instructions.

The court instructed the jury as follows: "Our Supreme Court has held that there is no absolute duty upon the driver of an automobile, on approaching a railroad crossing, to stop his car before going upon the crossing, but they have said that the rule being that a traveler must conform his conduct to that of a prudent man situated as the jury may find the plaintiff to have been immediately as he approached the crossing, that it is for the jury to say whether, under all the facts and circumstances as they then appeared to him as a prudent man, that he should not only have looked and listened, but he also should have stopped his car. So it is necessary for you to consider and determine whether or not, in view of all the facts and circumstances as you find them to have been at the time that Mr. Kimbrough approached that crossing, whether as a prudent man he should have stopped that car. Unless you find, gentlemen of the jury, that the plaintiff was negligent, as I have instructed you, without further consideration, you will answer the fifth issue 'No.'"

This instruction restricted the jury's consideration of this question to the elements of contributory negligence recited by the court. It prohibited consideration of other elements of negligence on the part of plaintiff, especially speeding up to go past the cars, permitting his engine to run with such noise as to interfere with his hearing, and others, and it excluded consideration of the combination of circumstances relied upon by defendant as contributory negligence; and there is this other defect, that his Honor failed to give the converse of this proposition, and nowhere in his charge does he instruct the jury that upon finding certain facts they will answer the issue of contributory negligence "Yes," as he then said: "If, however, you find that he was negligent, you must proceed to the further consideration of the evidence and determine whether or not the negligence which you may find that the plaintiff was guilty of contributed to his injury." *Jarrett v. Trunk Co.,* 142 N. C., 466.

Proximate cause upon facts admitted or found by the jury is a question of law. "If plaintiff failed to stop when it was his duty to stop, it

is clear that such neglect of duty contributed to his injury, and it was error to leave this question to the jury." *Kimbrough v. Hines,* 180 N. C., 274.

The court had previously instructed the jury that if plaintiff "failed to exercise proper care within the rule stated, it is such negligence as will bar recovery, provided, always, it is the proximate cause of his injury." This instruction is also subject to the objection that conduct of plaintiff, which of itself would bar his right to recover, was submitted to the jury on the question of proximate cause.

The court also instructed the jury as follows: "The defendant says that if you find that notwithstanding the fact that they failed to give any signal, that notwithstanding that there was an obstruction that interfered with his view, and notwithstanding the fact that it was running the train too fast, still there would have been no injury if Mr. Kimbrough had looked and listened and stopped his car, and that, therefore, you should find that his negligence in so doing was a contributing cause of his injury."

The defendants' contention was that, if the matters recited in this instruction were found to be true, and plaintiff failed to look and listen and failed to stop, his conduct was contributory negligence as matter of law, and that the jury should have been so instructed.

Defendants noted an exception to the following instruction: "If his view is obstructed or his hearing an approaching train is prevented, and especially if this is done by the fault of the defendant and the company's servants fail to warn him of its approach, and induced by this failure of duty, which has lulled him into security, he attempts to cross the track and is injured, having used his faculties as best he could, under the circumstances, to ascertain if there is any danger ahead, negligence will not be imputed to him, but to the company, its failure to warn him being regarded as the proximate cause of any injury he received." It is patent that this instruction falls with the decision of this case on the former appeal (180 N. C., 274), in that it totally ignores plaintiff's duty to stop, if prudence on his part required it. If proximate cause is a question for the jury, the court erred in this instance in taking it from them.

It would not do to confine plaintiff's duty in the premises merely to two, or even three, recited facts, because the jury must be allowed to consider the situation in its entirety, and all the facts and circumstances connected with it, and then to say whether an ordinarily prudent man would have acted as plaintiff did on this occasion, or pursued a safer course, one which he himself says was open to him, and which, if he had adopted it, would have prevented the injury to him. Nor is it true that the failure on the part of the defendant to warn of the train's approach was,

as matter of law, conclusively negligent, for whether so or not may depend very much upon all the facts and circumstances of the situation at the time, and the jury may well have found upon the evidence that the plaintiff was grossly imprudent in taking so great a risk, but should have waited for only a few moments and until he was better informed as to the safety or danger of crossing before "leaping in the dark" and taking his life into his own hands.

Even if this instruction may have been correct in the abstract, it was error to give it in this cause, under the facts and circumstances as now presented.

Defendants assign as error the following instruction to the jury: "I instruct you that the defendant had the right to put cars on that connection track, but that they had no right to leave the cars on the track extending up to the main line so as to obstruct the view of the traveler upon the highway approaching the crossing, as I have instructed you. If, however, you find that there was a breach of duty in that regard, this establishes negligence on the part of the defendant in respect to that matter." The record is entirely lacking in evidence that the defendants, or either of them, left these cars on the track extending up to the main line so as to obstruct the view of the traveler on the highway. The record is silent as to when and by whom the cars were put in such position, if it is granted that they were at any time so close to the crossing, which defendants denied, and it is error to give an instruction which is not supported by the evidence. *Griffin v. R. R.,* 137 N. C., 247; *King v. Wells,* 94 N. C., 344. It was also error to instruct the jury that the facts recited, taken by themselves, constituted negligence on the part of defendants. Besides, the recited facts did not constitute negligence, as matter of law, but whether so or not was for the jury to decide.

The defendants contended that it was the duty of the plaintiff to stop his automobile and to stop the noise of his engine before attempting to drive across the track, and that this duty was imperative if his view of the track was totally obstructed, and whether this, or the obstruction of the string of cars, was the proximate cause of the injury the jury should have been left perfectly free to determine.

The declarations of the plaintiff made after the accident were incompetent, not being *pars rei gestæ.* Evidence substantially the same was held to be incompetent in *Bumgardner v. R. R.,* 132 N. C., 438. See, also, *Smith v. R. R.,* 68 N. C., 107; *Williams v. Tel. Co.,* 116 N. C., 558; *Rumbough v. Improvement Co.,* 112 N. C., 751; *Egerton v. R. R.,* 115 N. C., 645.

The evidence admitted, after objection by defendant, as to the shifting engines not ringing their bells while running at Selma, was clearly incompetent and irrelevant, and prejudicial. That did not even tend

to prove that the engineer on the train in question did not ring his bell or blow the whistle. Similar evidence was held to be incompetent in *Ice Co. v. R. R.,* 126 N. C., 797. This was manifest error. The Court, in that case (*Ice Co. v. R. R., supra*), as appears from the headnote, said: "The evidence did not throw any light on the question directly before the jury, and was calculated to divert and mislead their minds to an unsafe verdict," citing *Grant v. R. R.,* 108 N. C., 462, at 470; *Henderson v. R. R.,* 144 Pa. St., 461.

There are other assignments of error which need not now be noticed.

The dominant and overshadowing error in the case is the refusal of the learned judge to nonsuit the plaintiff upon the evidence and at its close. The train was late, and naturally running at a high speed to make up for lost time. Plaintiff was injured about 11 o'clock, on 27 January, 1919, while he was returning from Pine Level. He knew that a train was "due to pass there not until 11 o'clock," so that he should have known, according to his own testimony, that he was crossing the track at a dangerous time. He testified: "As I came up on the track the engine was there." And again: "As I came up it looked like a death trap, and the engine was right over me. When I got upon the track they hit me." These excerpts are sufficient to show that he drove into the train and that he knew how dangerous his act was, as he called it a "death trap." There could not have been a more threatening situation, and one that should have warned a man with the least sense of prudence to desist, rather than risk his life by his daring act. A few moments loss of time was nothing as compared with the chances he was taking. It was nothing short of recklessness upon his own version of the facts. The more careless the plaintiff proves the engineer to have been, the more and more reckless was he. There was evidence that the bell was rung, for the witness, R. P. Oliver, testified that he could hear it distinctly, and that he could see the train, and he was in no way connected with the plaintiff or the railroad company, but was an indifferent and impartial witness. There was other evidence of the fact. The witness, L. M. Batton, testified that he was at Selma that morning and heard the train coming and heard it blow, the crossing or the station blow, but thought it was the crossing blow, being unusually loud, which attracted his attention. J. T. Adams heard the train, and also heard the whistle blow, and saw Kimbrough pass at the rate of 15 or 20 miles an hour. L. B. Early testified that he saw the train, and Kimbrough could have seen it if he had looked. The conductor stated that the train consisted of twelve cars, and it was running 15 miles an hour, and that it made a good stop. There was much other testimony to the same general effect. The fireman testified that he rang the bell for the road crossing where plaintiff was hit by the train, and had rung the bell from

the railroad crossing to the road crossing. The conductor on this train stated that he blew the station and crossing signals, and that plaintiff's car just darted out. He described minutely the different blasts of the whistle for station and crossings. He and the automobile were running at the same speed and came together on the crossing. He took every precaution at those places to prevent any accident, and that he did everything in this instance that could be done to avoid an accident. He used the distress signal and applied the emergency brakes, which were the Westinghouse, usual and approved type, and in good order. So that there was strong evidence for the defense that no precaution against accident was omitted by the engineer and fireman. The evidence was not all one way.

But omitting the defendant's testimony, if the plaintiff had used the care not only of an ordinary prudent man, but of a man of the slightest prudence, the accident could not and would not have occurred.

In *Railroad Co. v. Houston*, 24 L. Ed. (U. S.), 542, the Court held that negligence of the railroad company was no excuse for negligence on the part of a traveler crossing its track; and that he must take the consequences when he carelessly walks or drives into a place of *possible* danger. He must use his sense of hearing and sight, and all other available precautions. If he goes upon the track instead of waiting for an expected train to pass, he is guilty of culpable negligence, and so far contributes to his injury as to deprive him of the right to complain of others, and the consequences of his reckless mistake and temerity cannot be cast upon the company. "No railroad company can be held for a failure of experiments of that kind. If one chooses, in such a position, to take risks, he must bear the possible consequences of failure. Upon the facts disclosed by the undisputed evidence in the case we cannot see any ground for a recovery by the plaintiff. Not even a plausible pretext for the verdict can be suggested, unless we wander from the evidence into the region of conjecture and speculation. Under these circumstances the court would not have erred had it instructed the jury, as requested, to render a verdict for the defendant." It has been well and truly said that a traveler about to use the tracks of a railroad must take no chances. Which of the tracks would or should be used for its various trains was, of course, a matter for the exclusive determination of the railroad company. It was held in *Rich v. R. R.*, 31 Ind. App., 10, that a traveler using a railroad track has no right to confine his precautions to his knowledge of the schedule and customs of the company, but must take due care against the approach of "extra trains," and even "wild trains," those which are expected as well as those not expected to use the track. He must look out for all trains, and any other rule, it was said, would measure his conduct by the altogether too liberal rule of

chances and risks, and would impose upon the railroad company too rigorous and burdensome responsibilities, regardless of the inconvenience to the public arising from operating its trains under any such handicap. *Abernathy v. R. R.,* 164 N. C., 91-95, and cases; *Ward v. R. R.,* 167 N. C., 148; *Treadwell v. R. R.,* 169 N. C., 694.

No one can predict when a train will pass any given point. The tracks are in constant use and must needs be, not merely for any private use of the railroad, but to serve the public, who have the right to prompt service. The railroad company cannot itself know at what times it may have to use its tracks; and, therefore, must be free to use them at all times. If they are tardy in the performance of their public duties, or delay performance, their patrons are swift to demand compensation if loss ensues. They are hedged in on all sides by these conflicting interests, and must serve as best they may an exacting public. They should be held to the strict discharge of these duties, it is very true, but to enable them to comply with the public demands, they must, and should, have the free and unrestricted use of their tracks, so far as is consistent with a proper regard for the rights of others, when carefully exercised, but not when done so carelessly and even recklessly as here in this case. One train was due at 11 o'clock a. m., the accident occurred at 11:05 or 11:10, as testified. Another train, the one into which the plaintiff actually ran his car, was overdue several hours, and perhaps unavoidably so. The plaintiff knew these facts, for he stated that one of these trains was not due until 11 o'clock. There was no urgency which required him to cross at the very time that he did. If he had waited but two or three minutes he would have crossed in safety, and unscathed, but instead he risked his life to save a little time, which, so far as appears, at least, was comparatively valueless. He did not leave his car and look toward Selma for the train. He could have seen far enough in that direction to have done so and returned to his car and driven across the track, out of any danger, before any train could possibly have reached him, and if he had done so, he would have seen the train coming and averted the disaster. But he was lacking in every essential of care and precaution, and suffered the terrible consequences of his gross negligence. Any man of the least degree of prudence would have taken better care of himself.

I do not agree that the case as now presented is the same as the one on the first appeal, but *materially* different. I had grave doubt when I wrote the opinion in the first appeal as to whether the plaintiff should not have been nonsuited at that time, but preferred to give him the benefit of the doubt and allow the facts to be more fully developed at the new trial. Instead of improving his case, I think the plaintiff has made it worse for himself by the added facts and the new version of those in the record before.

My conclusion is that he should fail in his suit, because of his plain and palpable negligence, which, as matter of law, proximately caused the 'injury. It may be said that, at the least, the negligence of both the railroad company and himself were concurrent, which also would bar his recovery. "Where the negligence of both plaintiff and defendant concur and continue to the time of the injury, the negligence of the defendant is not in the legal sense the proximate cause of plaintiff's injury." *Hamilton v. Lumber Co.*, 160 N. C., 47.

It was held in *Neal v. R. R.*, 126 N. C., marg. p. 634 (Anno. Ed.): "Where the evidence on the part of the plaintiff (the defendant having introduced none) is demurred to, and, if true, establishes negligence on the part of the plaintiff and of the defendant, concurrent to the last moment, a judgment as of nonsuit sustaining the demurrer is proper." .

I dissented in *Perry v. R. R.*, 180 N. C., 290, which had several features in common with this case, and they are so much alike that what I said in my dissenting opinion there (concurred in by *Justice Brown*) is applicable here, though this is a much stronger case against this plaintiff than were the facts there against Perry and his companions. I now strongly affirm what I then said, and also adopt what was written by *Justice Brown* in the first appeal of this case as my own view, though I think the case as now presented much stronger than it was when he so ably discussed the questions which were then involved. I refer to both opinions for further argument, without repeating what is there said. I also refer to *Coleman v. R. R.*, 153 N. C., 322, where *Justice Brown* gave the opinion of this Court, which was unanimous, and which so clearly states the principle governing here as to the duty of the plaintiff under the menacing circumstances.

If the plaintiff had acted as any prudent man would have done, and not have rushed, or rather jumped, with his car, under a quick driving low pressure upon the crossing, he would have passed over it without the least difficulty and in perfect safety, and, as I have said, he would have reached the other side unscathed. It was his rashness that brought the trouble upon him, which naturally followed his act. The fault was all his own, and he should bear the loss of which he was the guilty author, and proximately so.

This opinion, it will be observed, is mostly predicated on the assumption of defendant's negligence primarily, this concession being made for the sake of argument, and the negligence which bars plaintiff's recovery is held to be his own, first, as contributing proximately to his injury; and if not, then, second, as so concurring with that of defendant as to operate a bar to his alleged right. The care of plaintiff must have been exercised, according to our authorities, before he had taken a position exposing him to peril or before he has entered into the zone of

danger.  *Coleman v. R. R.,* 153 N. C., 322.  A traveler is not permitted
to drive blindly upon a railroad track and impute any resultant injury
he receives to the railroad company, when he is the principal cause of
his own misfortune.  It was held in *Coleman v. R. R., supra:* "A rail-
road crossing is itself a notice of danger, and all persons approaching
it are bound to exercise care and prudence; and when the conditions are
such that a diligent use of the senses would have avoided the injury, a
failure to use them constitutes contributory negligence.  By stopping,
looking, and listening before reaching a railroad right of way at a public
crossing, and at a place where the view is obstructed by houses, the
plaintiff has not performed his duty, or exercised the care required
before crossing the track; and it appears that the right of way extended
some sixty-five feet from the track, with an unobstructed view, and that
by stopping thereon before reaching the track the plaintiff could have
seen, or have become aware of, the approaching train in time to have
avoided the injury complained of, in failing to do so he is guilty of
contributory negligence, the proximate cause of the injury, and his
action is barred thereby."  If the plaintiff had stopped and gone near to
the track he would have had an unobstructed view of the approaching
train, and would have avoided the injury.

My conclusion is that the action should have been dismissed.